[Criminal No. 891.   Filed July 12, 1940.]

[104 Pac. (2d) 159.]

HOWARD NETHKEN, Appellant, v. THE STATE OF ARIZONA, Respondent.

Mr. George T. Wilson, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Respondent.

ROSS, C. J.—Howard Nethken was convicted of practicing medicine without a license, and he has appealed.

He was, and had been for some time before the charge was preferred against him, a licensed practitioner of naturopathy but had no license to practice medicine or surgery. On or about May 10, 1939, Mrs. Martha Hamblin Larkin, then 66 years of age, called at defendant's office on East Van Buren Street, Phoenix, and in consultation with him disclosed that she believed she had a cancer of the uterus. He examined her and as a result thereof advised her that she had no cancer of the uterus but did have a cancer on the bottom of her right foot, which should be removed or it would cause her death in a short time. Mrs. Larkin had a lump or growth on the bottom of her foot but it had never caused her any pain or in any manner inconvenienced or prevented her from using her foot. The defendant, for an agreed compensation of $25, treated the place on the foot, which he called cancerous, by the use or application of electricity in such manner as to cauterize or cut the flesh. He employed for that purpose an apparatus usually and commonly employed by surgeons in performing operations on patients. The electricity in this instance, according to defendant's own testimony, was turned on the target through a copper wire connected with a diathermy machine and from one-half to an inch from the target. The electrical heat emanating therefrom he said looked like a blue flame but that it was not a blue flame.

The patient explained that the pain from the burn was so intense that it required four persons to hold her while the operation was being performed. The burn was about an inch in diameter and about one-eighth of an inch deep. It left a sore that was later

treated by Dr. Louis G. Jekel, a dermatologist of Phoenix, who testified that:

"The face of this sore was filled with what is technically known as exuberant granulations, or ordinarily known as charred flesh; . . . "

Doctor J. H. Patterson, a physician and surgeon located in Phoenix, testified that the instrument used by defendant was

"a surgical diathermy, which is a standard equipment in all surgical operative rooms,"

and that its use for the purpose of cauterizing or cutting tissues, the removal of growth upon one's foot, or any other part of the body, constitutes a surgical operation.

■ Defendant contends that we have no statute that makes the practice of medicine or surgery without a license a crime and that if there is such a crime it must be a creature of statute since everyone at common law could practice medicine or the healing arts. Defendant bases this contention on the inadequacy of section 2560, Revised Code of 1928, as amended by section 2, chapter 99, Laws of 1935, to define the crime charged. The material part of such section reads:

"Any person who practices, or attempts to practice, without having a valid, recorded certificate, shall be guilty of a felony. . . . "

This section is a substitute for paragraph 4746, Civil Code, Revised Statutes of 1913. It appears therein under the title "Practice of Medicine." In the revision of 1928 it appears under the title "Medicine and Surgery." In the 1913 statute it reads as follows:

"Any person who shall practice, or attempt to practice, or advertise or hold himself out as practicing, medicine or surgery, osteopathy, or any other system or mode of treating the sick or afflicted, as defined in

18

this act, in this state, without having, at the time of so doing, a valid, unrevoked certificate, as provided in this act, shall be guilty of a misdemeanor, . . . ''

The subject matter treated under the title ''Practice Of Medicine,'' found in the laws of 1913, and under the title ''Medicine and Surgery,'' found in the laws of 1928, is the same. Both provide for a board of medical examiners, for the examination of applicants to practice, the subjects of examination, for the issuance of a certificate authorizing one to practice, for cancellation of certificates for malpractice, and for punishment of persons found practicing medicine or surgery who have not been licensed.

The revision of 1928 has greatly reduced the language contained in the statutes of 1913 but has not changed its meaning. The direction to the code commissioner was that he

''revise and codify the laws of the State. . . . The said Commissioner shall not, however, undertake to make any change of existing laws, but shall harmonize where necessary, reduce in language, and remove inconsistencies where the same are found to exist; . . . '' Sec. 3, chap. 35, Laws of 1925.

From this language it is apparent it was not intended to authorize any change in the meaning of the laws. We have on numerous occasions, when considering the revision of 1928, held the same meaning was carried forward, even though the language was changed by omission of words and sometimes sentences, unless it was clear that a change in meaning was intended. *In re Sullivan's Estate,* 38 Ariz. 387, 300 Pac. 193; *State Tax Com.* v. *United Verde Extension Min. Co.,* 39 Ariz. 136, 4 Pac. (2d) 395; *Albert Steinfeld & Co.* v. *Allison Min. Co.,* 41 Ariz. 340, 18 Pac. (2d) 267; *Castaneda* v. *National Cash Register Co.,* 43 Ariz. 119, 29 Pac. (2d) 730; *Mutual Benefit Health & Acc. Assn.* v. *Neale,* 43 Ariz. 532, 33 Pac.

(2d) 604; *County of Maricopa* v. *Hodgin*, 46 Ariz. 247, 50 Pac. (2d) 15, 101 A. L. R. 793; *Melendez* v. *Johns*, 51 Ariz. 331, 76 Pac. (2d) 1163.

After examining section 2560, *supra*, together with associated sections treating of the same subject matter under the title "Medicine and Surgery" and comparing it with the subject matter treated under the title "Practice Of Medicine" in the Revised Statutes of 1913, we conclude the omission from the former of the words "or surgery, osteopathy, or any other system or mode of treating the sick or afflicted" from the revision did not change the meaning but only reduced the language. When the definition of the practice of medicine is taken into consideration, it is plain the omission was to eliminate redundancy of language and not to exempt one from punishment who practiced, or attempted to practice, the profession of medicine without a license.

"§ 2555. Practice of medicine defined. A person shall be regarded as practicing medicine who shall, by any indication, or statement, claim his ability or willingness to, or does, diagnosticate, or prognosticate, any human ills; or claims his ability or willingness to, or does prescribe or administer any medicine, treatment or practice; or performs any operation, or manipulation, or application for compensation therefor, except it be in usual practice of dentistry, midwifery, or pharmacy, or in the usual business of opticians, or of vendors of dental or surgical instruments, apparatus and appliances. Practicing medicine shall include the practice of osteopathy." Rev. Code 1928.

We conclude that there is the statutory offense of practicing medicine without a license.

The next question is, was what defendant did to or for Mrs. Larkin something he had no right to do under his license to practice naturopathy. In this particular kind of the healing art no medicine may be used and the treatment is nonsurgical. The legis-

lature, in chapter 105, Laws of 1935, authorized persons possessing the qualifications therein prescribed, when duly licensed by the board of naturopathic examiners, to practice naturopathy. Section 5 of said chapter reads:

"Naturopathy Defined. For the purpose of this Act, Naturopathy, which includes all forms of physiotherapy, is hereby defined to be: A system of treating the abnormalities of the human mind and body by the use of drugless and nonsurgical methods, and includes the use of physical, electrical, hygienic, and sanitary measures incident thereto."

This section of the statute permits a naturopath to use electricity in treating the human body and mind, but prohibits such practitioner from performing surgical operations. In other words, his methods must be nonsurgical and drugless. The operation performed by the defendant on Mrs. Larkin was with an instrumentality in use by surgeons, and the only evidence that we have as to its character is that it was a surgical operation. That the operation performed was surgical in its nature seems conclusive. The defendant undertook to remove the growth on Mrs. Larkin's foot by burning it out. If he had used the scalpel to cut it out, the act would have been no more surgical. While he had the right to use electrical heat in the practice of naturopathy, he had no right to use it to perform a surgical operation. His methods of treating disease are defined by the statute as nonsurgical and drugless. There is nothing in the evidence to indicate that defendant carelessly or mistakenly administered an overdose of heat, or that he burned Mrs. Larkin by accident. On the contrary, the evidence is that he intentionally and purposely applied the electricity to destroy the lump on her foot by burning it out. He adopted the surgeon's method of curing cancer, the only one, we believe, that has been discovered to date.

The defendant asks this court, under the power given it by sections 445 and 446, Code of Criminal Procedure for the State of Arizona, to modify the judgment and sentence by ordering him out on probation. His sentence was for from one to three years imprisonment in the state prison. He was 76 years old at the time of the trial. The jury recommended "extreme leniency" in its verdict. Under section 418 of said Code, a defendant may appeal from " . . . (b) A sentence, on the ground that it is illegal or excessive." Defendant claims his sentence, in view of his age and the recommendation of the jury, is grossly excessive. It is apparent from the evidence that the jury made its recommendation only on account of defendant's old age. The evidence shows that his act in performing the operation upon Mrs. Larkin was in flagrant disregard and violation of the law. It also shows that he had, at the time, a neon electric sign in front of his office, such sign being eight or nine feet long and about two feet wide, on one side of which was the word "Tuberculosis" and on the other the word "Cancer" and that he posed as "a doctor specializing in tuberculosis and cancer."

While the sentence may seem a little severe, in view of defendant's age, it must be remembered that society needs to be protected against charlatans and quacks, and one way to do it is to let them know when they are caught at their illegal practices that they will be adequately punished. We do not feel, under the circumstances, that we should reduce the sentence or direct probation for defendant, especially in view of the fact that the prosecution and sentence herein were had and given before the Code of Criminal Procedure went into effect.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.