253 P.2d 344

**NIGHOHOSSIAN v. STATE ex rel. PATTERSON, Secretary of State Board of Medical Examiners.**

No. 5620.

Supreme Court of Arizona.

Feb. 9, 1953.

Garcia & Cordova, of Phoenix, for appellant.

Fred O. Wilson, Atty. Gen., and Phil J. Munch, Asst. Atty. Gen., for appellee.

UDALL, Justice.

The State of Arizona, at the relation of J. H. Patterson, Secretary of the State Board of Medical Examiners, brought an equitable action in Pinal County against defendant Ardashes Nighohossian, to enjoin and restrain him from practicing medicine without first having obtained a license so to do. After a hearing, judgment was entered granting the injunction prayed for, defendant's motion for a new trial was denied, and this appeal followed.

The plaintiff's amended complaint, which admittedly was brought under Chapter 42, Section 7, Laws of 1949 (now appearing as Sec. 67–1107, subsec. (e), A.C.A.1939, 1952 Perm.Supp.), after stating the jurisdictional facts, alleged in paragraph II:

"That on the first day of February, 1951, and on numerous days thereafter * * * defendant did engage in the

practice of medicine, he not having any license so to do, in violation of Section 67–1103 to 67–1109, A.C.A.1939, Cumulative Supplement of 1949." and in paragraph III:

"That defendant is threatening and intends to continue the aforesaid acts and plaintiff believes and has good cause to believe that defendant will, unless restrained, continue in the future to cause great and irreparable injury and harm to the public health, safety and morals."

Paragraph III was added on leave given to amend after defendant presented a motion to dismiss for failure to state a claim. The trial court granted defendant's motion for a bill of particulars and the state furnished same in considerable detail. Defendant's answer admitted the jurisdictional facts but denied generally the foregoing allegations of the complaint. A jury was impaneled to render an advisory opinion as to the facts in this equitable matter, but eventually the court dismissed the jury as it determined that there were no issues of fact to submit to them.

The matter is submitted to us upon an agreed statement of facts, and incorporated therein is the testimony of the defendant who was called by the state as an adverse witness for cross-examination under the statute. From his testimony it appears that defendant is 43 years old, a shoemaker by trade, that he had lived in the Casa Grande area and had been treating patients there for two and one-half years preceding the trial. He grew up in an orphanage, and, except for the grade school-level education he received there, was self-educated, having received no medical training of any kind. In response to a question as to whether he was practicing medicine without a license, he stated: "I am practicing medicine without a license. Yes. I told you why I do it." The reason given was that it was for "the benefit of mankind" and "to help those who suffer". Asked the average number of persons treated on an average day, defendant answered: "I treated very many people. I can't count them. God knows that." However, defendant denied having charged or received any compensation for his services but admitted on cross-examination that many persons, after receiving treatment, out of gratitude left money in a basket on the table. These contributions, defendant claims, were used to purchase the medicines and supplies used in his practice. Defendant issued no prescriptions but furnished medicine and bandages to his "patients".

By an avowal to the court defendant offered to prove, by the testimony of 150 persons, that his treatment was beneficial and that these "patients" were physically improved. The court properly ruled that such evidence was immaterial and constituted no defense.

Dr. J. H. Patterson, secretary of the medical board, testified that the defendant was not a licensed physician in Arizona.

The trial court took the view, although expressing some doubt as to its correctness, that compensation is not an element of practicing medicine as defined by the first part of our statute relating to diagnosis and treatment of disease, and excluded other proffered testimony showing that no compensation was received, as being wholly immaterial.

The court concluded, on the basis of these rulings and the proof and admission that defendant had no license to practice medicine, that there were no real issues of fact to submit to the jury, hence it was dismissed.

Defendant urges as reversible error (1) the exclusion of his proffered evidence that he received no compensation, and (2) the failure to submit this issue to the jury, since, he urges, compensation is an essential element in the practice of medicine in all its parts as defined by the statute.

The procedure followed in this case is authorized by the following statute:

"(e) The attorney general, a county attorney, the state board of medical examiners, or any citizen of a county where any person shall engage in the practice of medicine or surgery, *defined in this act,* without having first obtained a license so to do, may, in accordance with the laws governing injunctions, maintain in the name of the state *an action in the county in which the offense is committed* to enjoin such person from so engaging until a license therefor be secured. * * * Such injunction shall not relieve a person practicing medicine or surgery without a license from criminal prosecution, but shall be in addition to any remedy provided for the criminal prosecution of the offender. In charging any person, in a complaint for injunction, or in an affidavit, information or indictment, with a violation of this act by practicing medicine or surgery without a license, it shall be sufficient to charge that he did upon a certain day and in a certain county engage in the practice of medicine or surgery, he not having any license so to do, without averring any further or more particular facts concerning the same." Chap. 42, Sec. 7, Laws of 1949, now appearing as Sec. 67–1107, subsec. (e), A.C.A.1939, 1952 Perm.Supp. (Emphasis supplied.)

The above statute enlarges the injunctive powers of the court. Before the statute was amended to include the above-quoted subsection it was settled in this state, by our decision in the case of State ex rel. La Prade v. Smith, 43 Ariz. 131, 29 P.2d 718, 92 A.L.R. 168, that courts could, in a proper case, under their general equity powers, enjoin the practice of medicine without a license. We held, however, such an injunction could not be granted merely because the person practicing had no license but only where there is an existing or threatened public nuisance because of lack

of training and unskillfulness on the practitioner's part, and that his actions are, or might be, injurious to health.

The legislature has by this recent enactment effectively changed the rule of the Smith case, supra, as to the proof required to show the existence of a nuisance, and declared that it is now necessary to allege and prove only (1) that the defendant is not licensed, and (2) the acts constituting the practice of medicine (without showing a lack of qualification or skillfulness), in order to entitle the state to an injunction.

The vital question then arises: what constitutes the practice of medicine as "defined in this act"? The governing statute is Chapter 42, Section 2, Laws of 1949, now appearing as 67–1102, A.C.A.1939, 1952 Perm.Supp., as follows:

"(a) A person shall be regarded as practicing medicine and surgery, or either, who, by any indication or statement, claims his ability or willingness to, or does, diagnosticate or prognosticate any human ills, real or imaginary, or claims his ability or willingness to, or does, prescribe or administer any medicine, treatment or practice, or performs any operation, manipulation, or application *for compensation* * * *. (Emphasis supplied.)

"(b) * * *."

Counsel for both sides have suggested various rules to guide the court in the interpretation of the statute. Our decision in the case of Nethken v. State, 1940, 56 Ariz. 15, 104 P.2d 159, 161, together with the legislative history of this legislation, persuades us, however, that the legislature did not intend to change the meaning of the definition by the 1949 enactment. The Nethken case interpreted the statutes involved, found under the title "Practice Of Medicine" in the Revised Statutes of 1913 and under the title "Medicine and surgery" in the revision of 1928, to have the same meaning as the original Act of 1913 even though the language was changed in the 1928 revision by the code commissioner who was " * * * not * * * to make any change of existing laws, * * *." Sec. 3, Chap. 35, Laws of 1925. The statute is in the same form today as in the 1928 revision except for immaterial changes in punctuation and the addition of a subsection by amendment in 1949, which is of no application here. Therefore we will look to the statute as it appears in the 1913 Code to determine the legislative intent as regards the element of compensation.

The statute, Section 4738, Revised Statutes of 1913, is wordy and repetitious, and the phrase "for hire, fee, compensation or reward, promised, offered, expected, received or accepted, directly or indirectly" appears three times, separately modifying the three subdivisions (b), (c) and (d) of the definition that substantially encompass (b) a holding forth as willing to prescribe

or treat; (c) actual diagnoses; and (d), actual treatment or prescription.

■ While the present form of the statute, supra is somewhat ambiguous as to what the words "for compensation" modify, we believe that there can be no disagreement with the view that as originally enacted by the legislature in 1913, except as it applies to acts indicating or pretending an ability or willingness to diagnose, "compensation" was made an integral part of the whole definition. The wisdom of including or omitting the element of compensation was for the legislature. The court construes the law as it finds it. The trial court was, therefore, in error in holding that compensation was not an essential element.

■ Does it necessarily follow that this erroneous ruling and a failure to submit the question of compensation to the jury impels a reversal of the judgment? We think not. Defendant admitted the receipt of money in the form of contributions. These funds went into his coffers and were controlled exclusively by him. The statute of 1913, supra, sets up a very broad definition: " * * * for * * * compensation or reward, * * * received or accepted, directly or indirectly", which patently embraces the facts admitted by the defendant in this case. Therefore, the proffered testimony of numerous witnesses to the effect that defendant made no specific charge for his services, and possibly

in many instances that no contributions were made by them, would be merely cumulative but in no sense controlling. The evidence proffered could not as a matter of law establish a defense in the face of the admissions made by defendant, hence it was not error to refuse to submit this question to the jury.

Judgment affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.