229 P.2d 713

**KUTS–CHERAUX et al. v. WILSON, Atty. Gen. et al.**

No. 5350.

Supreme Court of Arizona.

April 9, 1951.

Rehearing Granted April 24, 1951.

See 230 P.2d 512.

462

Morgan & Locklear, of Phoenix, for appellants.

Fred O. Wilson, Atty. Gen., and Richard C. Briney, Asst. Atty. Gen., for appellees.

UDALL, Chief Justice.

The basic question here is the right of licensed naturopaths to prescribe and to use drugs for compensation in the practice of their healing art. A subsidiary question involves the constitutionality of section 67–1107, A.C.A.1939, prior to its amendment, Laws 1949, ch. 42, sec. 7, which sets forth the penal provisions for one practicing medicine without a license issued by the state board of medical examiners. . . .

A statement of the background of the litigation will aid in understanding the problems presented. The state medical board was complaining to various law enforcement officers that the naturopaths were overstepping the bounds prescribed by Laws 1935, ch. 105, now appearing as ch. 67, art. 12, A.C.A.1939, which defines the practice of naturopathy. County attorneys of two counties had commenced or were threatening to commence criminal prosecutions against the naturopaths for allegedly practicing medicine without a license. Hence to determine their legal rights in the premises this suit for a declaratory judgment was brought. Plaintiffs, individually and as members of the naturopathic board of examiners of the State of Arizona, directed their suit against the attorney general, the county attorneys of Maricopa and Pima counties, and the state board of medical examiners as defendants. The parties will hereafter be designated as they were in the trial court.

There are no issues of fact raised in this case; only questions of law concerning the interpretation of the statutes defining naturopathy and medicine are involved. After an amended complaint and answer were filed, both plaintiffs and defendants moved for summary judgment. The trial court properly considered this was a case for summary judgment and after the matter had been thoroughly briefed and argued, it rendered judgment upholding the right of naturopathic physicians to make diagnoses and prognoses of human ills but denying them the right to

prescribe substances as medicine for compensation in the care and alleviation of human ills. From this latter holding plaintiffs have appealed.

In fairness it should be stated that counsel who now represent plaintiffs on appeal supplanted other counsel who represented them in the lower court. In the excellent briefs submitted to this court, counsel for plaintiffs have narrowed the issues, abandoned some theories previously advanced, and urged new ones. However, the pleadings upon which the case was tried, and upon which plaintiffs must stand in this court, were not amended.

We shall first consider the subsidiary question involving the penal statute, sec. 67–1107, supra.. Briefly stated, plaintiffs contend that this statute, under which certain prosecutions were commenced, when taken literally, is violative of the due process clauses of the state and federal constitutions in that it does not validly define an offense under the law. The statute in question, in so far as material, reads: "Any person who practices, or attempts to practice medicine, surgery or osteopathy, without having a valid recorded license to so practice issued by the state board of medical examiners, *upon conviction,* shall be guilty of a felony. * * *" (Emphasis supplied.) The emphasized words "upon conviction" are those at which the objection is leveled. If we were bound to give a strict construction to this penal statute, then it might be argued that the in-

formation must necessarily allege a conviction in order to state an offense. This would create an obviously absurd impossibility, making the statute completely nugatory. Admittedly this section was inartfully drawn as the words "upon conviction" had no place therein. The legislature subsequently recognized this fact by revising the law and omitting them. See Laws 1949, ch. 42, secs. 7(b), p. 79, 67–1107 (b), Cum.Pocket Supp. A.C.A.1939.

The legislature, however, by enactment of section 43–102, A.C.A.1939, has provided the yardstick by which penal statutes in this state are to be construed. It reads in part as follows: " * * * The rule of the common law that penal statutes are to be strictly construed, has no application to this Code; its provisions are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice. * * *" See State v. Ferraro, 67 Ariz. 397, 198 P.2d 120; State v. Behringer, 19 Ariz. 502, 172 P. 660, and McCall v. State, 18 Ariz. 408, 161 P. 893, 898, Ann.Cas.1918A, 168, for some of our interpretations of this statute. In the latter case it was stated: " * * * and when it can be reasonably done to give each statute such a construction as will enable it to reach and destroy the evil at which it is aimed."

When the definition of the practice of medicine contained in section 67–1102, A.C.A.1939, is coupled with the penal pro-

visions contained in section 67–1107, supra, prior to the 1949 amendment, it fixes an ascertainable standard of conduct adequate to inform persons accused of a penal violation thereof of the nature and cause of the accusation against them. Construing the fair import of the terms of the statute, no reasonable person could doubt the intent and meaning of the language used by the legislature. We hold, therefore, that the inclusion of the words "upon conviction" did not void the statute.

The basic and primary contention made by plaintiffs is that the term "drugless * * * methods", as used in section 67–1205, A.C.A.1939, refers to the naturopathic system as it existed at the time of the adoption of the law in 1935. Defendants contend, however, that the legislature by this same statute qualified and limited the practice of naturopathy.

The statute in question, which defines naturopathy, reads: "For the purpose of this act, naturopathy, which includes all forms of physiotherapy, is hereby defined to be: A system of treating the abnormalities-of the human mind and body by the use of *drugless* and *non-surgical methods,* and includes the use of physical, electrical, hygienic, and sanitary measures incident thereto." (Emphasis supplied.) Plaintiffs' argument is based upon the following facts as found by the trial court:

"At the time of the adoption of this act the evidence discloses that the members of the profession were actually using certain substances, medical in character. Naturopathy as practiced, was defined and understood by its schools, practitioners and its text writers as a system of the healing arts, embracing prevention, diagnosis, care and treatment of human ills, diseases, traumas, deformities, and the practitioner was, by the standards of the profession, allowed to use substances largely nutritional of plant, animal or mineral origin as are naturally found in and required by the human body and particularly to prescribe in the treatment of patients, dehydrated and pulverized food substances, minerals, cell salts, herbs, plant roots, barks and vegetable oils. * * * "

"The Naturopathic Board of Examiners, appointed under the provisions of the act, have, from the date of the enactment of the law, consistently interpreted the law to authorize its fraternity to use botanical, organic, biochemical minerals, and tissue cell substances and antiseptic and germicidal agents. The Board has consistently interpreted 'drugless' as synonymous with 'naturopathy' and to authorize its licentiates to employ in their practice botanical and biological agents of natural origin and substances, present in the human body, required for the rebuilding of impaired or diseased tissues."

In its final analysis the real issue presented in this case is what was the intent of the legislature in using the term "drugless * * * methods" in defining natur-

opathy? It is conceded that the word "drugless" does not appear in any standard medical dictionary, nor has it acquired any legal or technical definition so far as we have been able to find. Plaintiffs contend that inasmuch as the term "drugless" does not have a technical meaning, it refers to that system under which the naturopathic profession operated at the time of the adoption of the act, as set forth in the findings of fact above.

■ In the absence of a clearly defined legislative intent, words and phrases are to be construed and understood according to the common and approved usage of the language, sec. 1–103, A.C.A.1939. This court stated in the case of Stewart v. Robertson, 45 Ariz. 143, 40 P.2d 979, 983:

" * * * We give, unless otherwise stated, the definition found in Webster's New International Dictionary, a work which is authoritative in its own field. *The word 'drug' is therein defined as 'any substance used as a medicine or in the composition of medicines for internal or external use.'* * * *" Webster's dictionary defines the suffix "less" as "A privative adjective suffix, denoting: *a* With nouns, *without, destitute of, not having, free from,* as in wit*less,* child*less,* father*less,* doubt-*less.*" The word "drugless" then, taken in its ordinary and, apparently, only meaning, manifestly must mean *without drugs.*

■ But, plaintiffs contend, the legislature used the term "drugless * * *

methods" in a descriptive sense, relating only to general practices; it did not intend to qualify or limit the practice of naturopathy as it then existed. We believe that plaintiffs' interpretation of the statute is unwarranted. A careful examination of the naturopathic act indicates that the legislature considered that naturopaths, by training, were not qualified to administer drugs. Section 67–1207, A.C.A.1939, sets forth the minimum educational requirements for the practice of naturopathy in Arizona. After listing the required subjects, the statute provides: "And such other subjects as the board may require, *excepting materia medica* and major surgery * * *." (Emphasis supplied.) Thus, the legislature by statute specifically provided that materia medica was not to be among the courses of study required by the state or among those added courses which the board might require as a requisite to obtaining a naturopath's license. Materia medica is the study of the properties and uses of drugs. Maloy's Medical Dictionary for Lawyers. In determining the intent of the legislature in adopting section 67–1205, supra, wherein naturopathy is confined to the use of "drugless and nonsurgical methods", it is evident that the legislature desired to prevent naturopaths from doing two things for which, by training, they are not qualified, viz.: prescribing drugs and performing surgical operations. It is significant that these are the only two subjects of study which are not by

466

statute and cannot, by the board, be made requirements for a naturopath's license.

Defendants state that they are at a loss to know, and so are we, what group of drugs or what drug does not have, either in its pure form or as a part of its ingredients, botanical agents, organic substances, minerals, tissue cell salts or substances naturally present in the human body, which, under the interpretation of the statute as adopted by the board, naturopaths are authorized to employ in their treatment of patients. Plaintiffs have not advanced an answer which would aid this court in drawing a line of demarcation between what naturopaths may or may not prescribe in the way of drugs. It seems obvious that the definition adopted by the naturopaths would include not only most of the known narcotic preparations prepared directly from botanical agents (e. g., Indian hemp, poppy, marijuana) but would include also most, if not all, of the drug preparations used generally, ranging from castor oil and epicac to thyroid and pituitary extracts, insulin and penicillin. It seems that by their own definitions naturopaths would have the right to prescribe and administer drugs of immense potency, which if prescribed or administered by unqualified persons might result in disastrous consequences.

Plaintiffs apparently seek the right to perform services for which by statute they are not qualified or trained. It should be noted that there exists in Arizona no such thing as a *right* to practice medicine. All that does exist is the *privilege* to practice medicine as allowed and regulated by the legislature. See Swank v. Patterson, 9 Cir., 139 F.2d 145. The legislature is cognizant of the fact that nothing more seriously affects the public health, safety and welfare than the improper practice of the healing arts by those who through lack of training are unqualified to do so, hence in the case of naturopaths the legislature qualified and limited their practice by statute to "drugless * * * methods".

Had the legislature not intended to qualify and limit naturopathic practice, it could easily have spelled out in clear and unequivocal language its recognition of naturopathy as it was taught and practiced at the time the act was adopted. For example, section 67–2101, A.C.A.1939, of the osteopathy act defined osteopathy as meaning: "* * * that system of treatment and healing of abnormalities of the human mind and body as taught and practiced in the standard colleges of osteopathy recognized by the American Osteopathic Association." Laws 1941, ch. 33, sec. 1, as amended 1942 (1st S.S.), ch. 9, sec. 1; repealed by Laws 1949, ch. 121, sec. 21. Had the legislature defined naturopathy in like manner, plaintiffs' case would indeed be persuasive. But the difference between the two statutes are conclusive against plaintiffs' contention.

This court on two previous occasions has passed on the statute in question, although not on the precise question now presented. In Nethken v. State, 56 Ariz. 15, 104 P.2d 159, 162, we stated: " * * * This section of the statute permits a naturopath to use electricity in treating the human body and mind, but prohibits such practitioner from performing surgical operations. *In other words, his methods must be nonsurgical and drugless. * * * His methods of treating disease are defined by the statute as nonsurgical and drugless. * * *"* (Emphasis supplied.) And in Gates v. Kilcrease, 66 Ariz. 328, 188 P.2d 247, 250, after citing section 67–1205 of the Naturopathy Act, section 67–704 of the Chiropractic Act and section 67–2101 of the Osteopathy Act, we observed: "From the above, it seems that the practitioner of naturopathy and chiropractic is limited to nonsurgical and nonmedical methods, while the osteopathic practitioner is placed more nearly on an equal with the medical physician."

Whether the statute in question is unfair, unwise, or unjust is a legislative matter and not for this court to determine. If relief is to be had, it must be through the legislature, not through the medium of this court. Our only concern is to interpret the law as it is written.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.