466 P.2d 18

Wendell C. KILPATRICK, Arthur J. Bowling, John Hempler, Harvey Lewellen, Vernon Groves, Tom Cobb, and Zane Porter, Petitioners,

v.

SUPERIOR COURT of Arizona, IN AND FOR the COUNTY OF MARICOPA, the Honorable Morris Rozar; Roy Miller, as surviving father of Carolyn J. Miller, deceased, on behalf of himself and his wife, Annie M. Miller, surviving mother of Carolyn J. Miller, deceased, and Antonia Almanza, as surviving spouse of Cirilo Almanza, deceased, Respondents.

No. 9538.

Supreme Court of Arizona, In Banc.

Feb. 27, 1970.

Jennings, Strouss & Salmon, by Rex Lee, Phoenix, for petitioners.

Moore, Romley, Kaplan, Robbins & Green, by Craig Kepner, Phoenix, for respondents.

Carson, Messinger, Elliott, Laughlin & Ragan, Lee R. Perry, and Browder, Gillenwater & Daughton, Phoenix, amici curiae.

STRUCKMEYER, Vice Chief Justice.

Petitioners applied to this Court for a writ of certiorari to review the action of the court below in denying their motion for summary judgment. We granted the writ to determine whether under the Constitution and the Workmen's Compensation Law of Arizona an action may be maintained by an employee for damages against a fellow employee predicated on negligence arising out of and in the course of employment.

A detailed recitation of the facts is unnecessary, it being sufficient to say that respondents Roy Miller and Annie M. Miller are the surviving father and mother of Carolyn J. Miller, deceased, and that Antonia Almanza is the surviving spouse of Cirilo Almanza, deceased. They brought an action against petitioners for damages, alleging that petitioners' negligence caused the death of Carolyn J. Miller and Cirilo Almanza. Both decedents were covered by Workmen's Compensation at the time they incurred the injuries which caused their deaths.

Petitioners moved for summary judgment, asserting that A.R.S. § 23–1023 of the Workmen's Compensation Act of Arizona protects employees against common-law damage actions brought by their fellow employees. They recognize that inherent in the problem is the question whether under the Arizona Constitution the Legislature may wholly forbid actions of negligence by employees against fellow employees.

It should immediately be stated that the Constitution is not a grant of power, but a limitation on the exercise thereof. Hart v. Bayless Investment and Trading Company, 86 Ariz. 379, 346 P.2d 1101; Clark v. Boyce, 20 Ariz. 544, 185 P. 136; State ex rel. Davis v. Osborne, 14 Ariz. 185, 125 P. 884. So, while generally it may be said that the State Legislature may exercise all those powers inherent in the people which are not delegated to another branch of government, Home Accident Insurance Co. v. Industrial Commis-

sion, 34 Ariz. 201, 269 P. 501, it cannot enact laws which will supersede constitutional provisions adopted by the people, Windes v. Frohmiller, 38 Ariz. 557, 3 P.2d 275. Where there is doubt in the legislative language, it is the court's duty to reconcile the language with the constitutional provision, Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808, and construe the statute in such a manner that it will be constitutional if possible, Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136.

Article 18 of the Arizona Constitution entitled "Labor" contains certain prohibitions, mandates and abjurations, ten in number, addressed to all branches of the government, which at the time of statehood in 1912 [1] were believed necessary to protect the rights of laborers and the working class from judicial and legislative attrition. Justice McAlister, concurring in Industrial Commission of Arizona v. Crisman, noted the benevolent purposes of Article 18:

"Up to the end of territorial government in Arizona, a recovery for personal injury resulting in death was limited to $5,000, and the cause of action therefor was subject to all the defenses of the fellow-servant rule, assumed risk and contributory negligence, but with the adoption of the constitution, which removed the limitation of recovery, abrogated forever the fellow-servant doctrine, made assumed risk and contributory negligence questions of fact for the jury to decide, and provided for the enactment of an Employers' Liability Law, as well as one for Workmen's Compulsory Compensation, 'a different and more advanced, as well as humane public policy' was inaugurated, one which made it possible to enforce in court a claim for personal injury or death without the necessity of overcoming practically insurmountable defenses." 22 Ariz. 579, 595, 199 P. 390 (1921).

There can be no doubt that the prohibitions, mandates and abjurations found in the various sections of Article 18 were designed to protect the rights of the laboring class from the evils which over the preceding century had eroded rights believed necessary to do justice between workmen and their employers.

Section 8 of Article 18 directs the Legislature to establish a Workmen's Compensation Law in Arizona. Its meaning is not obscure, yielding readily to critical scrutiny. As drafted on December 8, 1910, at the Constitutional Convention of the Territory of Arizona and as later adopted by the people, it read:

"The Legislature shall enact a Workmen's Compulsory Compensation law applicable to workmen engaged in manual or mechanical labor in such employments as the Legislature may determine to be especially dangerous, by which compulsory compensation shall be required to be paid to any such workman by his employer, if in the course of such employment personal injury to any such workman from any accident arising out of, and in the course of, such employment is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or

---

1. For 100 years prior to the adoption of the Arizona Constitution a series of restrictive judicial decisions, often embodied in legislative acts, eroded the right of laborers to recover damages for injuries suffered in the course of employment. In Butterfield v. Forrester (1809) Kings Bench, 11 East 60, 103 Eng.Rep. 926, the doctrine of contributory negligence slipped casually into the common law as a defense to the master's wrong irrespective of the degree of negligence of the servant and of the magnitude of the risk to which the master exposed him. c. f. Bohlen, Cont.Neg. 21 Harvard Law Rev. 233, Harper & James, The Law of Torts, Vol. 2, page 1194. In Priestley v. Fowler (1837) 3 M. & W. 1, 150 Reprint 1030, the fellow-servant doctrine was invented as an exception to the master's vicarious liability and in Farwell v. Boston & Worcester R.R. (Mass.1842) 4 Metc. 49, recognition was given in this country to the doctrine of assumption of risk. c. f. 1 Larson's Workmen's Compensation Law p. 25 § 4.30, "Contraction of Workmen's Remedies."

danger inherent in the nature thereof, or by failure of such employer, or any of his or its officers, agents, or employee, or employees, to exercise due care, or to comply with any law affecting such employment; Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution."

On September 29, 1925 it was amended to, among other things, broaden the classes or workmen covered, but the substance was not significantly changed insofar as relates to the problem here.[2]

Paragraph one of Section 8, as quoted and as amended, first, is a direction to the Legislature to enact a Workmen's Compensation Law by which injured employees are to be given a remedy, other than by suit for damages, for injuries incurred in the course of their employment; and, second, by the proviso, confers upon a workman the power to elect which remedy he chooses to exercise—whether to take the compensation as provided by the Legislature

under the mandate of the Constitution or retain the right to sue the employer *"as provided by this Constitution".*

Of Section 8, this Court said on March 17, 1914, two years after statehood:

> "This mandate to the Legislature was carried out in the enacting of the Workmen's Compulsory Compensation Law, and, in doing so, there was created a new civil action heretofore unknown to our laws, available to the employé injured in the circumstances provided by law. It is optional with the injured employé as to whether he will accept the compensation. *The employés right to exercise this option being a constitutional right, legislation is impotent to deprive him of it."* (Emphasis supplied.) Consolidated Arizona Smelting Co. v. Ujack, 15 Ariz. 382, at 387, 139 P. 465.

■ It is of importance to emphasize that the proviso speaks only of an election to sue the employer. If the workman takes compensation, it does not require him to give up any rights he may have had to sue the actual wrongdoer other than his

---

2. Section 8 as amended provides:

"The Legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the State, or any political subdivision or municipality thereof as may be defined by law and in such private employments as the Legislature may prescribe by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law, in case of his death, by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by a failure of such employer, or any of his or its agents or employee or employees to exercise due care, or to comply with any law affecting such employment; provided that it shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer as provided by this Constitution; and, provided further, in order to assure and make certain a just and humane compensation law in the State of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, now existing in the State of Arizona, and producing uncertain and unequal compensaton therefor, such employee, engaged in such private employment, may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury.

The percentages and amounts of compensation provided in House Bill No. 227 enacted by the Seventh Legislature of the State of Arizona, shall never be reduced nor any industry included within the provision of said House Bill No. 227 eliminated except by initiated or referred measure as provided by this Constitution."

employer.[3] This is so simply because the proviso unequivocally says so:[4]

"Provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution."

It can hardly have been by chance that this election was directed solely to the right to sue the "employer". Were it intended otherwise, language would have been used which would also have embraced the fellow employee, the actual wrongdoer.[5] Moreover, the proviso uses the words "said employer". This can only refer to the "employer" as previously used in the mandate: "* * * compulsory compensation shall be required to be paid to any such workman by his employer * * *." Obviously the compensation contemplated was not intended to be paid by the employer's employees.

■ Nor does the amendment of September 29, 1925 empower the legislature to abrogate common law rights of action. The amendment only serves to broaden the coverage afforded by the compensation laws, requires the employee to elect, prior to injury, which right he selects against his employer, and fixes the amount which the

3. "It is ancient law that the servant is liable for damages for his own tortious acts, even though at the time he was engaged in the work of his employer." Judson v. Fielding (1929) 227 App.Div. 430, 237 N.Y.S. 348, 354.
"'The decisions generally are to the effect that in an action *ex delicto*, where the doctrine of *respondeat superior* is, or may be, invoked, the injured party may sue the servant alone or the master alone, or may bring a single action against both.'" Wirth v. Bracey, 258 N.C. 505, 128 S.E.2d 810 at 813 (1963). (Emphasis in original.)

4. On the afternoon of December 5, 1910, the Constitutional Convention took up the adoption of Proposition No. 72:
"Mr. President: 'The question now comes before the convention on the final adoption of Proposition No. 72.'
"Mr. Connelly: 'I think that it should be optional with the employee whether he accepts the amount offered by the employer as the amount may be only $1,000, which would not be a fair amount and for this reason I offer the following amendment:
'Provided that it shall be optional with said employee to settle for such compensation or retain the right to sue said employer as provided by this Constitution.'
"Mr. Ellinwood: 'I have no objection to that clause because I think Mr. Connelly's amendment covered that question. I have the New York Statutes before me. The New York employer must pay a given amount in case of an accident on death and also for an injury and it is optional with the employee whether he accepts the amount offered by the employer who sues him for compensation.'

"Mr. Cassidy: 'It seems to me that this is very timely legislation and that if the State Legislatures are taking this up that it surely ought to be provided for in the State Constitution.'" Journal of the Arizona Constitutional Convention.

5. The members of the Constitutional Convention were described by Edward H. Peplow, Jr. in his History of Arizona, Vol. 2, page 18, as, "There can be no question that these 52 men constituted an exceedingly able and cosmopolitan group." Many long active and prominent in Arizona affairs were members. The President of the Constitutional Convention, George W. P. Hunt, was later 7 times Governor of Arizona; Sidney P. Osborn was later 4 times Governor of Arizona; and Dr. B. B. Moeur was later 2 times Governor of Arizona. There were many distinguished citizens and community leaders, to name but a few such as E. E. Ellinwood, Morris Goldwater, Vice President of the Convention, Carlos C. Jacome, E. A. Tovrea, Mulford Winsor and Homer R. Wood.
The Convention's Propositions 72, pertaining to Workmen's Compensation, and 88, other proposals concerning workmen, were combined later to become Article 18 of the Arizona Constitution. See Propositions of the Arizona Territorial Constitutional Convention of 1910. They were extensively revised in the Judiciary Committee and on the floor on final passage. Of the Judiciary Committee's 13 members, 10 were lawyers. Three, the Chairman, the Honorable D. L. Cunningham, Albert C. Baker and Alfred Franklin, later served the State as members of this Court.

workman receives in settlement of his claim. *Again, this is so simply because it says so!* [6]

It should also be noticed that the proviso speaks of the right to sue the employer "as provided by this Constitution." This is an obvious reference to Section 6 of Article 18 because it is this section which preserves the right of a workman to sue from legislative abrogation and judicial intermeddling. Hence, Section 8 must be considered in the light of Section 6 of Article 18. But even without the direct reference in Section 8 to other constitutional provisions we would be compelled to construe the two sections together for constitutions must be construed as a whole and their various parts must be read together. Corporation Commission of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P. 2d 443.

Section 6 provides:

"The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

Of Section 6, this Court in 1926, speaking through the Honorable Alfred C. Lockwood, said:

"It is true that the action of negligence was originally a common-law one, but its status was, in our opinion, changed when Article 18, § 6, was adopted.

"* * * it is beyond question that the 'right of action to recover damages for injuries * * *' therein mentioned

is the common-law action of negligence, and that by the prohibition against its abrogation *it was taken from its status as one subject to the will of the Legislature* and imbedded in the Constitution, just as firmly and truly as the Compensation Act or Liability Law. Nay, more so, for these last two had only constitutional mandates which required positive action on the part of the Legislature to make them effective, while the action for negligence needed no statutory aid, *and its principal incidents were placed beyond legislative control.* * * *"  (Emphasis supplied.)  Alabam's Freight Co. v. Hunt (1926), 29 Ariz. 419, 443, 242 P. 658.

There is no room for quibbling. The language of Section 6 is simple, explicit and all-inclusive. It cannot be misunderstood. Without limitation it confers the right to recover damages for injuries as existing under the common law. The rights so protected include not alone the right of action against an employer on his vicarious liability but a right against the actual wrongdoer, the person who committed the negligent act *which caused the injury.*

The Constitution is, of course, the supreme law of the State circumscribing the otherwise plenary power of the Legislature. Ahearn v. Bailey, 104 Ariz. 250, 451 P.2d 30. A decision which would deny the right to sue fellow employees who are the actual wrongdoers could not be correct, for it would be contrary to the

---

6. In Phoenix, Arizona more than considerable public interest was generated by the proposed constitutional amendment. Commencing on September 11, 1925 and running through Tuesday morning, September 29th 8 editorials were published in the Arizona Republican of Phoenix analyzing for the voters the effect of the constitutional amendment to Article 18, Section 8. From September 17th until September 29th, 9 news stories were carried, some containing quotes from prominent public figures pointing out the desirability of the amendment. On September 19th, the Association for the Protection of Industrial Legislation published a three-column ad, on September 24th a one-half page ad, on September 28, 1925 a one-half page ad, and on Tuesday morning, September 29th a three-quarter page ad, setting forth reasons why the voters should approve the amendment. On Tuesday morning, September 29th, the Arizona Republican headlined its front page, "Arizona Votes on Compensation Act Today." On Wednesday morning, September 30, 1925, its headline was, "Compensation Measure Carries." Neither the ads, the articles, nor the editorials even suggest that the common-law rights of an employee could be modified by intervention of the legislature.

plain language used in direct derogation of the express rights guaranteed in Section 6.

Any discussion of the first clause of Section 6 of Article 18 is incomplete without a discussion of the vital language of its second clause which forbids the placing of a statutory limitation on the amount to be recovered in a suit for damages. This prohibition was considered of such importance that it was reiterated in a separate section and placed in Article II of Arizona's Constitution, entitled "Declaration of Rights," in these words:

> "No law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person." Article II, Section 31.

Any construction of Arizona's Workmen's Compensation Laws as an absolute prohibition against suing a fellow employee would limit recovery to the amount provided by the Legislature. For example, under A.R.S. § 23–1044, subsec. B an employee earning $500.00 per month who suffers the loss of a leg is entitled to 55% of his average monthly wages, $275.00 a month, for 50 months, for a total of $13,-750.00. In a suit for damages a jury could award 100% of his actual loss of earnings for his lifetime and also damages for such items as past and future pain and suffering.[7] A decision relegating to the employee the single remedy of compensation would limit recovery in absolute contradiction of the express words of the Constitution twice repeated.

We think that what has heretofore been stated is sufficient to dispose of any argument that the language of Article 18, Section 8 grants to the Legislature the power to wholly confine an employee to the compensation provided by the Act. However, it does not follow that the Legislature can not prescribe reasonable conditions governing the exercise of the right to sue.

Nearly 40 years ago, in Moseley v. Lily Ice Cream Company, 38 Ariz. 417, 300 P. 958 (1931), this Court construed the constitutionality of A.R.S. § 23–1023, then § 1435 R.C. 1928,[8] and spelled out the appropriate area of legislative action. It was held that if the Legislature took away

---

7. By contrast, juries in recent years have allowed for the loss of leg to workmen with similar earning capacity amounts up to $186,735.00, Russell v. Monongahela R. Co., 159 F.Supp. 650; and see Dagnello v. Long Island R. Co., D.C. N.Y., 193 F.Supp. 552, affirmed in 289 F.2d 797, 9 Cir., upholding a judgment of $130,500.00.

8. Section 23–1023 prior to amendment read in its relevant part:
"A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or in event of death his dependents, shall elect whether to take compensation under this Chapter or to pursue his remedy against such other person.
B. If the election is to take compensation, the claim against such other person shall be assigned to the State for the benefit of the compensation fund, or to the person liable for the payment thereof."

As amended in 1968, Section 23–1023 reads in part:
"A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death his dependents, may pursue his remedy against such other person.
B. If the employee entitled to compensation under this chapter, or his dependents, does not pursue his or their remedy against such other person by instituting an action within one year after the cause of action accrues, the claim against such other person shall be deemed assigned to the insurance carrier or to the person liable for the payment thereof."

The two acts are fundamentally similar in that each provides for the assignment of the claim for the negligence or wrong of another not in the same employ if the employee chooses to take compensation.

the employee's common-law action for negligence against an employee not in the same employ such would be unconstitutional. The Court said:

"It is urged that this provision [Article 18, § 6] makes the former common-law action for negligence a constitutional one, and that it cannot be abrogated by the Legislature. We think there is no question that this proposition, stated in the abstract, is correct.

\* \* \* \* \* \*

If Section 1435, *supra*, were to be construed as taking away the right to pursue the constitutional action of negligence without granting a reasonable election to all persons entitled thereto, it would indeed be unconstitutional. Such, however, in our opinion, is neither the purpose nor the meaning of the section. It expressly gives the injured employee or his dependents the right to elect after the injury whether to take compensation under the act or to pursue his remedy against a third party under his constitutional right." 38 Ariz. at 420, 421, 300 P. at 959.

Petitioner's position flies squarely in the face of the decision in Moseley because it does not give the injured employee a reasonable election *or any election at all* whether to take compensation or pursue

his remedy against the fellow employee under his constitutional right.[9]

In interpreting Arizona's Workmen's Compensation Act to exclude a suit by an employee against a fellow employee, petitioners rely in part on, and in part enlarge upon, the arguments advanced by the dissenting judge in Marquez v. Rapid Harvest Co., 1 Ariz.App. 562, 405 P.2d 814. The dissent was predicated in a large measure on the proposition that the Legislature, in enacting the Workmen's Compensation Laws of this State must have used the word "employer" to mean both employers and employees. For example, A.R.S. § 23–1022 provides:

"The right to recover compensation pursuant to the provisions of this chapter for injuries sustained by an employee shall be the exclusive remedy against the employer, \* \* \*."[10]

There is no magic in statutory construction and no legal legerdemain should be used to change the meaning of simple English words so that the resulting interpretation conforms the statute to the sociological and economic views of judges or lawyers. Words are to be given their usual and commonly understood meaning unless it is plain or clear that a different meaning was intended. State v. Miller, 100 Ariz. 288, 413 P.2d 757; State Board

---

9. Express constitutional authority to enact workmen's compensation legislation is unnecessary, Atkinson-Kier Brothers-Spicer Co. v. Ind. Comm. (1928), 35 Ariz. 48, 274 P. 634, supra. Workmen's Compensation Laws are a legitimate exercise of the police power of the State. Miami Copper Co. v. Schoonover, 65 Ariz. 239, 178 P.2d 554; Industrial Commission v. Navajo County, 64 Ariz. 172, 167 P.2d 113.

The Arizona Legislature would have the power to enact legislation excluding all other rights and remedies were it not restrained by the Arizona Constitution.

10. "§ 23–1022. Compensation as exclusive remedy; exceptions

A. The right to recover compensation pursuant to the provisions of this chapter for injuries sustained by an employee shall be the exclusive remedy

against the employer, except as provided by §§ 23–906 and 23–964, and except where the injury is caused by the employer's wilful misconduct and the act causing the injury is the personal act of the employer himself, or if the employer is a partnership, on the part of one of the partners, or if a corporation, on the part of an elective officer thereof, and the act indicates a wilful disregard of the life, limb or bodily safety of employees, in which event the injured employee may, at his option, either claim compensation or maintain an action at law for damages.

B. The term 'wilful misconduct' as employed in this section shall be construed to mean an act done knowingly and purposely with the direct object of injuring another."

of Dispensing Opticians v. Schwab, 93 Ariz. 328, 380 P.2d 784; Local 266 International Brotherhood of Electrical Workers, A. F. of L. v. Salt River Project Agr. Imp. and Power District, 78 Ariz. 30, 275 P.2d 393; Mendelsohn v. Superior Court, 76 Ariz. 163, 261 P.2d 983; Kuts-Cheraux v. Wilson, 71 Ariz. 461, 229 P. 2d 713, rehearing 72 Ariz. 37, 230 P.2d 512; Taylor v. McSwain, 54 Ariz. 295, 95 P.2d 415; Albert Steinfeld & Co. v. Allison Mining Co., 41 Ariz. 340, 18 P.2d 267. The word "employer" is a well understood English word meaning one who employs someone else. It categorizes and classifies and, consequently differentiates between master and servant, those who do the hiring, the employers, and those who are hired, the employees. As between the two classes, employers and employees, the use of one inexorably excludes the other.

Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, contract or recorded word, no matter how explicit, could be saved from judicial tinkering. Moreover, if the sense of a word is not to be taken in its usual and commonly understood meaning except under circumstances where a different meaning is clearly intended, it becomes impossible for men to mean what is said or say what they mean and purposeful communication is unattainable.

Both petitioners and amici curiae point to what they believe to be the undesirable consequences of a holding by this Court permitting a recovery by an employee against his fellow employee. These arguments are more appropriately addressed to the Legislature in a case such as this where there is no ambiguity in the legislative language used. However, they have been rejected before by other courts and we do not think it necessary to dwell upon them at length.

"Under most statutes, immunity to common-law suit is extended only to the employer. An injured employee can therefore sue his own co-employee for the latter's negligence, * * *. This result has been supported by reference to the plain language of the statute, by the argument that existing rights of action should not be deemed destroyed in the absence of clear language, by calling upon the moral principle that a tortfeasor should not be relieved of the consequences of his own wrongdoing, and by stressing the danger to workmen themselves of a doctrine that persons engaged in dangerous occupations should be immune from the consequences of their negligence." 2 Larson's Workmen's Compensation § 72–10. (Footnotes omitted.)

Finally, there is a suggestion that our holding will allow an injured employee to recover under the Workmen's Compensation Laws, and then recover through the courts on an action for negligence—in effect a double recovery. We do not think this necessarily follows from our decision.

In Arizona the doctrine of equitable subrogation has been repeatedly recognized and applied. It is founded upon principles of equity and its purpose is the prevention of injustice adopted by equity to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it. D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85; Mosher v. Conway, 45 Ariz. 463, 46 P.2d 110.

The Supreme Court of Kansas, in a negligence action wherein the plaintiff, who was compelled to pay another for the negligence of his employee afterward brought suit against the employee, held:

"The rule, so well established as to hardly require citation of authorities, is that an agent, a servant, or an employee, is liable to and may be sued by his principal, or his master, or his employer, for damages which the latter, in the absence of fault on his part, has been compelled to pay third persons because of the negligence of such agent,

servant, or employee." (Citations omitted.)

\* \* \* \* \* \*

" 'The doctrine of subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development has been the natural consequence of a call for the application of justice and equity to particular situations. Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is no longer, as formerly limited to sureties and quasi sureties, but is now broad and expansive and has a very liberal application. As now applied, it is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Its use to enforce restitution in order to prevent unjust enrichment has elsewhere been pointed out." Fenly v. Revell, 170 Kan. 705, 228 P.2d 905, 907, 908, 909.

We think that equity would be effective here to prevent a double recovery by allowing subrogation of the proceeds from any judgment obtained either on the application of the employer if a self-insurer, his insurer, or the Compensation Fund, in the amount actually paid to the employee as required by Arizona's Act.

The motion for summary judgment was properly denied.

LOCKWOOD, C. J., and UDALL, McFARLAND, and HAYS, JJ., concur.