466 P.2d 806

**S. C. HORNBACK, Petitioner,**

**v.**

**INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Graver Tank and Manufacturing Company, Respondent Employer,**

**Graver Tank and Manufacturing Company, Respondent Carrier.**

**No. I CA–IC 289.**

Court of Appeals of Arizona, Division 1, Department A.

March 24, 1970.

Rehearing Denied April 27, 1970.

Review Granted May 19, 1970.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent Graver Tank and Manufacturing Co..

STEVENS, Judge.

The question before this Court is whether The Industrial Commission of Arizona was correct in its award wherein it declared that it did not have jurisdiction to entertain the injured workman's petition to reopen, a petition based upon an asserted new, additional or previously undiscovered disability. The problem arises because after the injured workman received an award which included both accident benefits and compensation for temporary disability, he sued a third party for damages arising out of his industrial injury and settled his civil action without securing the "written approval of the Commission, or the person liable to pay the claim." See A.R.S. § 23–1023, subsec. C. These events transpired prior to the filing of his petition with The Industrial Commission seeking to reopen his workmen's compensation claim.

The injured workman is S. C. Hornback sometimes referred to as Clarence Skeets Hornback. We will refer to him as the petitioner.

He was employed by the Graver Tank and Manufacturing Company herein referred to as Graver. Graver is a self insurer which means that it, rather than The Industrial Commission (prior to the 1968 amendments to the Workmen's Compensation Act) or the State Compensation Fund (since the 1968 amendments became effective), has the obligation of paying both the accident benefits and the compensation which The Industrial Commission may award to the petitioner. Graver is the "person liable to pay the claim." A.R.S. § 23–1023, subsec. C. This section was amended effective 23 April 1965. It was again amended in 1968 effective 1 January 1969. The above quoted language is carried forward in the two amendments. In this opinion our references to sections of the Arizona Revised Statutes (A.R.S.) will be to those sections prior to the 1965 and the 1968 amendments unless expressly stated to the contrary, the industrial accident and the award having both occurred in 1961.

Fluor Corporation, Ltd., herein referred to as Fluor, was "the third party," and it was a defendant in the civil suit filed by the petitioner. Fluor paid to the petitioner the settlement now in issue.

## THE FACTUAL BACKGROUND

There were two separate proceedings in the Superior Court for Pima County and the attorneys before this Court did not participate in any phase of either of the Superior Court matters. The record of one of these, the civil action, was not presented to The Industrial Commission and is not before this Court. It was summarized by present counsel in a hearing before The Industrial Commission of the jurisdictional issue. Under these circumstances our factual recitations as to the Superior Court civil action may not be completely accurate and in any future proceedings in relation to this industrial claim there is freedom to establish these matters with greater particularity. The other Superior Court matter was a combined mental health and guardianship proceeding. The record of the latter proceeding was before The Industrial Commission and is before the Court. The record of the mental health-guardianship proceeding which we have before us appears to be reasonably complete up to the date of the order authorizing the settlement of the civil action.

On 24 September 1961, while in the course and scope of his employment with Graver, the petitioner sustained an industrial accident and injury. An award was entered bearing date of 20 October 1961. The title of this document is "Findings and Award for Temporary Disability." Finding No. 7 recites that the medical evidence reflects that the petitioner has no physical disability resulting from the accident. The award granted "accident benefits through October 11, 1961" and in addition thereto granted "the sum of $266.08, payable forthwith." The latter sum was an award of compensation for temporary disability. The award contained a 20-day clause and no further action was taken within the 20-day period. The award became final subject to

the right to petition to reopen for new, additional or previously undiscovered disability. A.R.S. § 23–1061, subsec. C; Industrial Commission Rule 64; and Adkins v. Industrial Commission of Arizona, 95 Ariz. 239, 389 P.2d 118 (1964). That is, The Industrial Commission retained the jurisdiction to consider a petition to reopen unless the facts before us terminated that jurisdiction.

The Industrial Commission file before us does not contain a written election by the petitioner "to pursue his remedy against" a third party tort-feasor whose negligence or wrong was the proximate cause of his injury. A.R.S. § 23–1023, subsec. A. A.R.S. § 23–1024, subsec. A stated that an employee by accepting workmen's compensation "waives the right to exercise *any* option to institute proceedings in court." (Emphasis Supplied).

Nevertheless the petitioner, as plaintiff, filed a Superior Court civil action in Pima County on 17 April 1962. The action named Graver and Fluor as defendants. He sought recovery in the sum of $125,000. The Industrial Commission file discloses a memorandum prepared by the then Chief Counsel of the Commission, which memorandum is dated 27 April 1962. The memorandum affirmatively discloses that The Industrial Commission had knowledge of the civil suit, in fact it related to a request by Fluor that The Industrial Commission defend the civil suit under Fluor's Workmen's Compensation policy. The Industrial Commission's knowledge of the civil suit is further confirmed by a letter in the file which was written by an Industrial Commission attorney on 13 July 1962. This letter advises Tucson counsel as to the industrial claim and award hereinbefore referred to.

A formal written judgment dismissing the civil action as to Graver was entered on 3 August 1964.

On 21 June 1965, the mental health proceeding was filed in relation to the petitioner. This proceeding reflects a serious mental problem. A guardian was appointed therein and that proceeding was carried forward as a guardianship matter. On 31 October 1966, the guardian was authorized to settle the claim against Fluor for $10,000 and the civil action was dismissed. After the judgment was entered which dismissed the action as to Graver, Graver did not participate in any phase of the civil action. Graver did not give its written approval to the compromise. So far as we are informed, Graver was not asked to consent to nor was it notified as to the pending settlement.

We are informed that both Graver and Fluor, in the civil action, urged the defense of the petitioner's election to receive benefits under the Workmen's Compensation Act. We are not informed that either Graver or Fluor sought extraordinary relief from the Arizona Supreme Court or from Division Two of the Court of Appeals to prohibit the petitioner from prosecuting his civil action. The record discloses that both Graver and The Industrial Commission had affirmative knowledge of the pendency of the civil action. Graver was "the person liable to pay the claim" yet neither the Commission nor Graver sought to participate in the civil action to protect their respective rights to assure that if the action was compromised that an adequate sum was paid in settlement.

On 24 January 1967, the petitioner again sought the benefits of the Workmen's Compensation Act by filing with The Industrial Commission his petition to reopen the claim. After certain procedural steps had been taken before the Commission, the decision of the Commission holding that it lacked jurisdiction was entered on 25 April 1969. Thereafter the present proceedings before this Court were timely filed.

## THE STATUTES AND THE CONSTITUTION

We quote the three (A.R.S.) statutory sections (in the form then in effect) which we believe to be the keys to the matter before us.

"§ 23–1023. Liability of third person to injured employee; election of remedies.

"A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death his dependents, shall elect whether to take compensation under this chapter or to pursue his remedy against such other person.

"B. If the election is to take compensation, the claim against such other person shall be assigned to the state for the benefit of the compensation fund, or to the person liable for the payment thereof. Such a claim assigned to the state may be prosecuted or compromised by the commission.

"C. If the election is to proceed against such other person, the compensation fund or person shall contribute only the deficiency between the amount actually collected and the compensation provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation provided for shall be made only with written approval of the commission, or of the person liable to pay the claim."

"§ 23–1024. Choice of remedy as waiver of alternate remedy.

"A. An employee, or his legal representative in event death results, who makes application for an award, or with the consent of the commission accepts compensation from an employer, waives the right to exercise any option to institute proceedings in court.

"B. An employee, or his legal representative in event death results, who exercises any option to institute proceedings in court waives any right to an award or direct payment of compensation from his employer."

"§ 23–1061. Application for compensation or increase of compensation; limitation; duty of physician.

"A. An employee entitled to compensation shall file with the commission an application therefor together with the certificate of the physician who attended him. The physician shall inform the injured employee of his rights under this chapter and shall give all necessary assistance in making the application for compensation and such proof as required by the rules of the commission without charge.

\* \* \* \* \* \*

"C. Like application shall be made for an increase or rearrangement of compensation. No increase or rearrangement shall be operative for any period prior to application therefor, and any increase or rearrangement shall be within the limits and classifications provided in this chapter."

We have heretofore stated in this opinion that it is our opinion that A.R.S. § 23–1061, subsec. C (now substantially § 23–1061, subsec. H) continued the jurisdiction of The Industrial Commission to entertain a petition to reopen unless the facts before us, as a matter of law, terminated that jurisdiction.

In addition to the foregoing statutes, we refer to certain provisions contained in Article 18 of the Arizona Constitution, 1 A.R.S. We quote section 6 in its entirety.

"§ 6. Recovery of damages for injuries

"Section 6. The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

Section 7 directs the Arizona Legislature to enact an Employers' Liability Law. Section 8 directs the Arizona Legislature to enact a Workmen's Compensation Law. This section, as it now stands, became effective in 1925. We do not find any provision in Section 8 which negatives an injured workman's right to sue a third party tortfeasor.

In the face of Section 6 of Article 18 of the Constitution and in the absence of express language in Section 8 of that Article, it is our opinion that § 23–1024, subsec. A is of questionable constitutionality unless the words "waives his right to exercise any option to institute proceedings in court" is limited to a suit against his employer. We recognize that the Supreme Court has upheld the constitutionality of this section.

Our opinions in these regards are fortified by the 1968 amendment of this section, and other sections, which amended section reads as follows:

"§ 23–1024. Choice of remedy as waiver of alternate remedy.

"A. An employee, or his legal representative in event death results, who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer.

"B. An employee, or his legal representative in event death results, who exercises any option to institute proceeding in court against his employer waives any right to compensation. As amended Laws 1968. 4th S.S., Ch. 6, § 39. Effective Jan. 1, 1969."

■■ We turn then to the consideration of A.R.S. § 23–1023. In our opinion the key words are found in subsection B namely, "the claim." Is this, "the claim," limited to the rights of the injured workman, or his dependents if he be deceased, under the provisions of the Workmen's Compensation Act? In the alternative do the words "the claim" refer to the tort-action rights and remedies available to the injured workman against the third party tort-feasor? We hold that the latter is the clear meaning. The measure of the recovery on "the claim" against the third party tort-feasor is far broader than is the measure of recovery under the Workmen's Compensation Act. There is the matter of pain and suffering. In a scheduled injury, the actual loss of earning capacity is not considered in a workman's compensation claim but can be considered in a third party tort-feasor ac-

tion. In relation to a death claim, the elements of damage which a court can consider are far more extensive than is the measure of compensation arising out of a death claim under the Workmen's Compensation Act. It is our opinion that it was not the intent of § 23–1023 to limit the recovery which may be available to an injured workman in a third party tort-feasor situation resulting in an industrial accident to the workman's compensation benefits, merely because he received benefits under the Workmen's Compensation Act.

It is noted in subsection B that because the petitioner accepted accident benefits and temporary compensation under the Workmen's Compensation Act his "claim * * * shall be assigned to the state for the benefit of the compensation fund or the person liable for the payment thereof." Does this mean that if the recovery is greater than the award that the "compensation fund or the person liable for the payment of the award" retains the excess? We believe not. The claim is the claim of the injured workman or his dependents and the excess belongs to them.

Subsection B states that after the claim is assigned by operation of law to the state "such a claim assigned to the state *may* be prosecuted and compromised by the commission" (Emphasis Supplied). Does this mean in a situation such as the one we have before us where minimal payments were made under the Workmen's Compensation Act and a substantial settlement was reached in the face of possible serious legal defenses that the acceptance of these minimal payments would prevent Mr. Hornback from receiving damages which he may have sustained at the hands of a third party merely because the Commission elected not to proceed? We think not.

■ From all that appears from the information which has been furnished to this Court in this instance The Industrial Commission and Graver had actual knowledge that the petitioner was asserting his rights against Fluor. Once the Commission and Graver chose to not exercise their rights

under the statutory assignment it is our opinion that the petitioner was free to proceed against Fluor, the alleged third party tort-feasor. Our opinions in this connection are fortified by subsection C wherein it is provided that in the event the recovery against the third party tort-feasor *is less than* the recovery under the Workmen's Compensation Act proceedings the employer's insurer shall be liable for the difference.

■ What then is the effect of the last sentence of subsection C which specified that the "compromise of any claim by the employee or his dependents at an amount less than the compensation provided for shall be made only with the written approval of the commission, or the person liable to pay the claim"? Graver urges, and by its award The Industrial Commission agrees, that the petitioner's settlement without the approval of the Commission or Graver terminated his rights to further benefits under the Workmen's Compensation Act. We do not agree. We are not faced with a settlement while the compensation claim is still pending. The award which is before us became final years before the settlement. The settlement at the time it was consummated was not "at an amount less than the compensation provided for." It may be that if the claim under the Workmen's Compensation Act can be reopened by reason of the petitioner's ability to relate this present disability to the industrial accident of 24 September 1961 that the future will disclose that the total monetary value of the petitioner's rights under the Workmen's Compensation Act are greater than the amount of the settlement. It is our opinion that the statute should be judged and applied based upon the values known as of the date of the settlement.

Whether under these facts the Commission or Graver could have demanded the right to participate in the settlement by demanding that no settlement be made without their "written approval" we need not decide. Both had knowledge and an early opportunity to participate if they had de-

sired to do so and both elected to remain aloof from the problems which the petitioner had in connection with his Superior Court action in Pima County.

The statutory provision for the written approval of the person liable to pay the claim is for the protection of the third party tort-feasor. The settlement was binding upon the petitioner in relation to the money which he could claim from Fluor. It is conceivable that when Fluor paid the $10,000 to the petitioner without the "written approval" of the Commission or Graver, that Fluor was not thereby protected against a further assertion of any rights which Graver might have because of the "assignment" of "the claim" by operation of law to "the state" for the benefit of Graver. Due to the lapse of time, due to actual notice of the Commission and Graver, and due to their respective failures to exercise their rights we have no fears for Fluor in this regard.

It is our opinion that the facts did not deprive The Industrial Commission of the jurisdiction to reopen. However, we would be reluctant to set aside the award if we entertained the opinion that to do so would be a vain and useless action on our part.

### THE CASE LAW

■ We are faced with the question as to whether petitioner had the right to attempt to prove a new, additional or previously undiscovered disability. We have reviewed the Arizona case law. We are mindful that we are bound by the decisions of our Arizona Supreme Court. McKay v. Industrial Commission of Arizona, 103 Ariz. 191, 438 P.2d 757 (1968).

Moseley v. Lily Ice Cream Company, 38 Ariz. 417, 300 P. 958 (1931), holds that once an employee has accepted compensation, his rights of every nature pass to the Commission.

The case of Industrial Commission of Arizona v. Nevelle, 58 Ariz. 325, 119 P.2d 934 (1941), holds that the Commission may collect from the third party only that which

it had paid and which it is bound to pay in the future. It holds that the Commission cannot profit by the suit against the third party; that it cannot collect any excess and then in turn pay the excess to the injured employee.

The first Pressley case, Pressley v. Industrial Commission, 73 Ariz. 22, 236 P.2d 1101 (1951), holds that when an employee accepts compensation he waives his right to sue the third party.

The second Pressley case, State ex rel. Industrial Commission v. Pressley, 74 Ariz. 412, 250 P.2d 992 (1952), holds that the rights of the Commission are subrogation rights and that no rights either direct or indirect remain in the employee. It further holds that the Commission has the right to intervene. It holds that there should be no double recovery.

The opinion in State ex rel. Industrial Commission v. Reese, 74 Ariz. 425, 250 P.2d 1001 (1952), reviews the above cases and affirms them. It states that there can be but one recovery and that the Commission is subrogated to the rights of the employee. It further holds that the Commission can intervene.

From the foregoing, it would appear that the petitioner herein had no right to recovery from Fluor and that he has no right to additional compensation even should the Commission grant the petition to reopen.

However, we believe that the foregoing conclusions are no longer sound. In Worthington v. Industrial Commission of Arizona, 85 Ariz. 310, 338 P.2d 363 (1959), the civil suit recovery by the estate of the deceased workman was held to not preclude an award of compensation to the dependents.

The Worthington decision encouraged this Court to permit recovery against a fellow employee in the case of Marquez v. Rapid Harvest Co., 1 Ariz.App. 562, 405 P.2d 814 (1965).*

■ The encouragement granted to the Court of Appeals by the Worthington case has been fortified by the very recent Supreme Court opinion in the case of Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (Decided 27 February 1970). In Kilpatrick, the Arizona Supreme Court cites the September 1965 Court of Appeals opinion in Marquez with approval and the Arizona Supreme Court opinion is silent

---

* Some confusion has arisen as to "Marquez". When the Court of Appeals was created the Act, A.R.S. § 12–120.23, authorized the Supreme Court to transfer and the Supreme Court did transfer a number of its pending cases to each of the Divisions of the new Court. The Supreme Court assigned its Cause No. 7028 entitled John R. Marquez, by his Guardian Ad Litem Malcolm L. Hillock v. Rapid Harvest Co., to the Court of Appeals. This particular case was decided by the Court of Appeals on 24 March 1965 and is reported in 1 Ariz.App. 138, 400 P.2d 345. This reported decision does not make reference to the Supreme Court number. This particular case involved a question relating to the setting aside of a default. The Supreme Court granted review on 21 September 1965 and published its opinion on review on 31 December 1965. The Supreme Court's opinion is reported 99 Ariz. 363, 409 P.2d 285. Supreme Court Cause No. 7197 entitled John R. Marquez v. Rapid Harvest Co., was also assigned to the Court of Appeals. The Court of Appeals opinion was entered on 22 September 1965 and is re-

ported in 1 Ariz.App. 562, 405 P.2d 814. The reported decision does refer to the Supreme Court number. The Supreme Court denied review of this particular Marquez decision on 1 December 1965. The latter Marquez decision involved the right of an injured employee to sue his fellow employee.

In the Supreme Court's opinion on review in No. 7028 it stated:

"This case is before us on review of a decision of the Court of Appeals, Division 2, 405 P.2d 814." 99 Ariz. at 364, 409 P.2d at 286.

Later in the opinion, the Supreme Court stated that it was vacating the Court of Appeals opinion. A search of the official records in the Court of Appeals discloses that the above-quoted statement in the Supreme Court's opinion was inadvertent error and that it was the earlier Marquez case (the default case) which should have been cited as being reviewed and vacated. This fact is confirmed by the very recent Arizona Supreme Court opinion in Kilpatrick to which reference is made in the body of the current opinion of the Court of Appeals.

as to the "vacating" thereof. In Kilpatrick the Arizona Supreme Court extensively reviewed the Arizona Constitution and statutory provisions and concluded that an injured workman who accepts compensation, while he may not sue his employer, he may sue his fellow employee. In our opinion an even stronger [if possible] argument exists in favor of upholding the absolute right of the injured employee to sue a third party tort-feasor even though compensation has been received.

We believe that there is no double recovery. The right of "the person liable to pay the claim" to intervene, if that person so desires, is clear. The right of "the person obligated to pay the claim" to reimbursement of the compensation and accident benefits theretofore paid is clear. We express no opinion as to the mechanics of that process where there is no petition to reopen. The right of "the person liable to pay the claim" to offset the net recovery which was received by the injured workman in the civil action, offsetting the same against future compensation and accident benefits to which the injured workman may be entitled under the Workmen's Compensation Act is clear. Again we express no opinion as to the formula to be applied or to the mechanics of the process.

It is our opinion that The Industrial Commission has jurisdiction to entertain the petition to reopen, and the award holding an absence of that jurisdiction is set aside.

DONOFRIO, P. J., and CAMERON, J., concur.