(63 South. 616.)

No. 19,597.

HENDERSON v. SHREVEPORT GAS, ELECTRIC LIGHT & POWER CO.

(Nov. 17, 1913. Rehearing Denied Dec. 15, 1913.)

*(Syllabus by the Court.)*

1. GAS (§ 14*)—REGULATION BY ORDINANCE—ENFORCEMENT.

A city ordinance, which is a contract between the city and a quasi public corporation, and which fixes terms upon which the said cor-poration shall supply gas and electricity to inhabitants of the city, will be enforced in favor of the inhabitants of that city.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

2. GAS (§ 14*)—REGULATION BY ORDINANCE—CONSTRUCTION.

Where such ordinance undertakes to divide the inhabitants into three different classes, terming the first "domestic consumption," the second for "public institutions," and the third "manufacturers," and the business of a certain inhabitant does not technically fall within any one of the three classes, it is a question for the court, when appealed to, to construe the contract and to determine within which class said inhabitant and his business shall be placed.

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

3. GAS (§ 14*)—REGULATION BY ORDINANCE—CONSTRUCTION.

A person who owns and conducts an automobile garage, in which he uses a gas engine for the purpose of generating an electric current to supply light for a large building in which he carries on his business, to charge electric automobiles and storage batteries, to run lathes and emery wheels, to make parts for cars, to put other parts of automobiles into good condition, to grind valves of cars, and do other work in that connection, will be placed in the class denominated "manufacturers," rather than in either of the classes denominated "domestic consumption" or "for public institutions," and be held obligated to pay the rate fixed for "manufacturers."

[Ed. Note.—For other cases, see Gas, Cent. Dig. §§ 10–11; Dec. Dig. § 14.*]

*(Additional Syllabus by Editorial Staff.)*

4. WORDS AND PHRASES—"MANUFACTURE."

The primary meaning of the word "manufacture" is something made by hand, as distinguished from a natural growth; but, as machinery has largely supplanted this primitive method, the word is now ordinarily used to denote an article upon the material of which labor has been expended to make it a finished product. Ordinarily the article so manufactured takes a different form, or at least subserves a different purpose from the original materials, and usually it is given a different name. Raw materials may be, and often are, subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product (citing Words and Phrases, vol. 5, p. 4348. See, also, vol. 5, pp. 4344–4346; vol. 8, p. 7716).

5. WORDS AND PHRASES—"DOMESTIC."

"Domestic" means a thing of or pertaining to one's house or home, or one's household or family, and excludes the idea of business, unless one pursues his vocation or calling within

his home (citing Words and Phrases, vol. 3, p. 2164).

6. WORDS AND PHRASES — "PUBLIC INSTITUTION."

A "public institution" is one which is created and exists by law or public authority, e. g., an asylum, charity, college, university, schoolhouse, etc.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, p. 5793.]

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Action by W. K. Henderson, Jr., against the Shreveport Gas, Electric Light & Power Company. From judgment for defendant, plaintiff appeals. Reversed and rendered.

Scheen & Blanchard, of Shreveport, for appellant. Alexander & Wilkinson, of Shreveport, for appellee.

SOMMERVILLE, J. Under an ordinance of the city of Shreveport, the defendant company was granted the right to operate a natural and artificial gas plant, and lay gas pipes through the streets and alleys and other public places in the city, and to charge for the gas consumed. The consumers were divided into three classes, with a certain charge for each class. The first class covers "domestic consumption," for which a maximum charge of 25 cents for 1,000 cubic feet of gas, less a discount for prompt payment, is fixed. The next class is for "public institutions," which may be charged a maximum of 20 cents per 1,000 cubic feet, less a discount for prompt payment. And the third class is that of "manufacturers," which may be charged a maximum of 11 cents per 1,000 cubic feet, less a discount for prompt payment. The price to be paid by manufacturers was also graduated, so as to permit a larger discount where certain designated cubic feet of gas were used.

Plaintiff owns and conducts an automobile garage, in which he uses a gas engine for the purpose of generating an electric current to supply the lights for a large building, to charge electric automobiles and storage batteries, to run his lathes and emery wheels with which he makes parts for cars when necessary, and places other parts of automobiles in condition so that they can be used, and to grind the valves of cars, and other work in this connection.

Defendant has classed plaintiff under the second paragraph of the first section of the ordinance, headed "domestic consumption," and has charged him the highest rate permitted by the ordinance for the natural gas furnished by it.

Plaintiff complains that the charge made by defendant is illegal, unreasonable, and excessive. He claims that his business falls within the fourth paragraph of the first section of the ordinance, headed "manufacturers," and that he should be charged the rate therein established. He asked for an injunction restraining defendant from refusing to furnish gas to him at the rate fixed for "manufacturers," and for a moneyed judgment for the amount paid by him through error on his previous monthly bills.

There was judgment dissolving the injunction, and dismissing plaintiff's suit; and he appeals.

[1-3] The ordinance which is the basis of and a part of the contract between the city of Shreveport and the defendant company is very short, and it undertakes to provide certain rates for all the gas consumed by the inhabitants of the city. And they are divided into only three classes, with a different rate, or charge, for each class before stated.

Defendant, being engaged in furnishing the city of Shreveport with gas and electric power for lighting, heating, and power, is in the nature of a quasi public service corporation. It is being operated under a franchise granted by the common council of the city of Shreveport, and under an ordinance which undertakes to say that defendant shall supply gas and electricity to the inhabitants of

the city at certain maximum rates, with the proviso:

"That a less amount may be charged by the said company on its own motion, but no greater amount shall be charged."

In thus undertaking to provide the rates to consumers for gas and electricity to be furnished by the defendant, and plaintiff's business not being specifically mentioned in the ordinance, the question presented for consideration is: Within which class does a person fall who conducts an automobile garage, in which he uses a gas engine for the purpose of generating electricity to be used in his business, and where that engine is supplied with fuel gas by the defendant company?

The question may be solved by a process of elimination; for it is clear that plaintiff is entitled to get gas from the defendant company, and that he must pay one of the rates established in the ordinance which grants to the defendant company the right to furnish and charge for gas.

[5] The first class provides for "domestic consumption." "Domestic" is defined by Webster to be:

"Of or pertaining to one's house or home, or one's household or family; relating to home life; as domestic concerns, life, duty, happiness, worship, service."

See, also, 3 Words & Phrases, 2164. The word "domestic" therefore excludes the idea of business; unless one pursues his vocation or calling within his home. The Century defines "domestic" to be:

"Relating or belonging to the home or household affairs; pertaining to one's place of residence, or to the affairs which concern it; or used in the conduct of such affairs."

And it is this commonly accepted meaning that the council of the city of Shreveport had in mind when it passed the ordinance referred to, and provided a price to be paid for the "domestic consumption" of gas.

Plaintiff does not operate his automobile garage in his home, or residence. It is a separate and distinct place of business, where he uses a gas engine for the purpose of generating electricity to be used there by him in the conduct of his business. He is not therefore a domestic consumer, and he cannot be charged the rates for "domestic consumption" of gas.

[6] The next paragraph provides for "public institutions" which use gas. A "public institution" is:

"One which is created and exists by law or public authority." 32 Cyc. 767.

Such is an asylum, charity, college and university, hospital, schoolhouse, etc. Plaintiff's business is not a public institution.

The third and last paragraph in the ordinance provides prices, or rates, to be paid by "manufacturers." And so we are forced to the conclusion that the city council of the city of Shreveport intended to embrace in this paragraph all forms of business, except those of public institutions. The word "manufacturers" appears to have been used to distinguish the use of gas for cooking, heating, and lighting homes and residences, and again for cooking, heating, lighting, and power purposes in "public institutions," from the use of gas for power purposes, which is more generally and largely used in manufacturing than in other businesses.

There is not a doubt that, when the council passed the ordinance and used the term "domestic consumption," it referred to the consumption of gas for cooking, heating, and lighting in homes and residences, which are the ordinary domestic purposes to which gas may be put; and, in the absence of any clause to the contrary, it is quite clear that the council did not contemplate that gas should be charged for as for domestic consumption when it was used for power purposes.

And, while the use of gas for power pur-

poses does not in every instance result in the manufacture of some article, yet, in the instant case, the gas used by the plaintiff in his business does generate electricity which produces light for the purposes of his business of carrying on an automobile garage, where he further uses the electricity for his lathes and other implements in that business.

It has been held that:

"The production of electricity by artificial means in a condition fit for use is generally held to be a manufacture, and the theory that it is merely the gathering of a gift of nature is disapproved." 26 Cyc. 522.

And in the case of Begg v. Edison Illinois Co., 96 Ala. 295, 11 South. 381, 38 Am. St. Rep. 94, the court said:

"According to the above definitions of the word 'manufacture,' we are constrained to consider and declare an electric light company a manufacturing corporation to all intents and purposes.
"It is no answer to this argument to say that electricity exists in a state of nature. * * * It is the produce of capital and labor, and in this respect cannot be distinguished from ordinary manufacturing operations." Burke v. Mead, 159 Ind. 252, 64 N. E. 880; People v. Wemple, 129 N. Y. 543, 29 N. E. 808, 14 L. R. A. 708; Commonwealth v. Keystone Electric Co., 193 Pa. 245, 44 Atl. 326.

In the case of State v. New Orleans Railway & Light Co., 116 La. 144, 40 South. 597, 7 Ann. Cas. 724, where that company claimed exemption from license taxation, we say:

"An electric light company is not a 'manufacturer' in the sense of the exemption clause of article 229 of the Constitution, authorizing the Legislature to impose license taxes."

We further say there:

"In the ordinary popular meaning of the word, a corporation which operates gas or electric light is not a 'manufacturer,' and is not so styled, though, scientifically speaking, gas or electricity may be a product of manufacture."

And we therein apply the rule that tax exemptions are strictly construed, and hold that the light company is not exempt from taxation under the provisions of the Constitution which exempt manufacturers from taxation.

On the other hand, we have held that a cooper is a manufacturer, and exempt (City of New Orleans v. Le Blanc, 34 La. Ann. 596); that rice millers are also manufacturers, and exempt from the payment of license taxes (City of New Orleans v. Ernst, 35 La. Ann. 746); that refiners of sugar are manufacturers and exempt (State v. American Sugar Refining Co., 108 La. 603, 32 South. 965, 973; see, also, United States v. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 254, 39 L. Ed. 325); that a publisher of a newspaper is a manufacturer and exempt (State v. Dupre, 42 La. Ann. 561, 7 South. 727); and that a sawmill is exempt (State ex rel. Browne v. Wilbert, 51 La. Ann. 1223, 26 South. 106).

Other jurisdictions have been equally lenient in holding certain businesses as being within the term "manufacturers," and in not restricting the term to those who produce some material substance or article from the raw material; such as a bridge building company; an asphalt company; a boiler maker; packing of beef; milling, etc.

And, under the express provisions of Laws Ill. 1893, p. 99, the words "manufacturing establishment, factory, or workshop," wherever used in such act, which declares that no female shall be employed in any manufacturing establishment, factory, or workshop, etc., more than eight hours in any one day, etc., shall be construed to mean any place where goods or products are manufactured, or repaired, cleaned, or sorted, in whole or in part, for sale or for wages. Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315.

It has also been held that every person who purchases, receives, or holds personal property of any description for the purpose of adding to the value thereof by any process of manufacturing, refining, rectifying,

or by a combination of different materials, with a view of making a gain or profit by so doing, shall be held to be a "manufacturer" for the purposes of the revenue act.

[4] "The primary meaning of the word 'manufacture' is something made by hand, as distinguished from a natural growth; but, as machinery has largely supplanted this primitive method, the word is now ordinarily used to denote an article upon the material of which labor has been expended to make it a finished product. Ordinarily the article so manufactured takes a different form, or at least subserves a different purpose from the original materials, and usually it is given a different name. Raw materials may be, and often are, subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product." 5 Words & Phrases, 4348.

All definitions of the term "manufacture" or "manufacturing" limit them to the production of material substances. And it is held in some jurisdictions that, because electricity is not a material substance, the electric companies are not manufacturers; while the opposite view is held in other jurisdictions.

As has been before seen, plaintiff is engaged in the automobile garage business, where he uses the gas furnished by the defendant for the purpose of generating electricity which is used by him for lighting purposes in his business, for charging electric automobiles and storage batteries, to run his lathes and emery wheels with which he makes parts for cars when necessary, and places other parts of automobiles in condition so that they can be used, and to grind valves of cars and other work in that connection. And, while the electricity used by him from the gas furnished by defendant may not be a material substance, it is a very necessary substance in his business; and as that business is not provided for in the ordinance under consideration, and as he is entitled to receive gas from the defendant company, and he is obliged to pay for same in accordance with the contract between the city of Shreveport and defendant, he must fall within one of the three classes found in the ordinance, or contract.

In construing the terms of contracts we do not apply the rule of strict construction applicable to exemptions from taxation. Plaintiff comes nearer being a manufacturer than he does a domestic consumer, or a public institution; and he must pay the rate established in the ordinance for gas used by "manufacturers."

The judgment appealed from is annulled, avoided, and reversed; and it is ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against defendant in the sum of $181.53; and that the injunction herein issued be reinstated and maintained—with costs in both courts.