785 P.2d 1221

PRESCOTT NEWSPAPERS, INC., an Arizona corporation; the State of Arizona; First Amendment Coalition of Arizona, Inc., an Arizona nonprofit corporation; Ron Palmatier, an individual, Plaintiffs–Appellees,

v.

YAVAPAI COMMUNITY HOSPITAL ASSOCIATION, an Arizona nonprofit corporation; George Bauman, Clare Budzilek, Carleen Ellis, J. Lloyd Ewart, David Griesemer, Joel Hiller, Gerald Kimmet, Chuck Roberts, and Carmelite Staker, in their capacities as members of the Board of Directors of the Yavapai Community Hospital Association, Defendants–Appellants.

No. 1 CA–CV 88–198.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 15, 1989.

Review Denied Feb. 14, 1990.*

* Feldman, V.C.J., of the Supreme Court, voted to grant both Petitions for Review.

Brown & Bain, P.A. by H. Michael Clyde, David J. Bodney and Michael W. Patten, Phoenix, for plaintiffs-appellees Prescott Newspapers Inc., First Amendment Coalition of Arizona, Inc. and Ron Palmatier.

Robert K. Corbin, Atty. Gen. by Steven J. Twist and Jessica Gifford Funkhouser, Phoenix, for plaintiff-appellee State of Ariz.

Lewis & Roca by John P. Frank, Susan M. Freeman, Beth J. Schermer and Janet Napolitano, Phoenix, for amicus curiae Arizona Hosp. Ass'n.

Favour, Weaver, Moore, Wilhelmsen & Schuyler, P.A. by Lance B. Payette and John B. Schuyler, Jr., Prescott, for defendants-appellants.

CONTRERAS, Presiding Judge.

Yavapai Community Hospital Association (Association) and the nine individual members of its board of trustees appeal from a judgment declaring they must comply with the Arizona open meeting law, A.R.S. § 38–431 et seq., and enjoining them from closing a "retreat" previously scheduled for the members of its board on May 1, 1987, or any other board meeting required to be open under the Arizona open meeting law. Appellants also appeal from the denial of their motion for new trial and motion to amend findings and conclusions. The appeal raises the following questions:

(1) whether the Association constitutes a "public body" within the meaning of A.R.S. § 38–431(5);

(2) whether the "retreat" of the Association's board of trustees scheduled for May 1, 1987, would have constituted a "meeting" within the meaning of A.R.S. § 38–431(3);

(3) whether the trial court's judgment infringes on the Association's right of privacy in its business affairs or its board members' rights of free speech and privacy; and

(4) whether the trial court erred in awarding appellees their attorney's fees pursuant to A.R.S. §§ 12–2030 and 38–431.07(A).

Because we conclude the Association is not a "public body" within the clear language of A.R.S. § 38–431(5) and, therefore, is not subject to Arizona's open meeting law, we need not decide the remaining questions. The judgment of the trial court is reversed, and the matter is remanded in order that the trial court can consider and enter an appropriate award of attorney's fees to appellants. We have jurisdiction pursuant to A.R.S. § 12–2101(B), (F)(1) and (F)(2).

## FACTS AND PROCEDURAL HISTORY

Viewed in the light most favorable to sustaining the judgment, the facts are as follows. Central Yavapai Hospital District (District or Hospital District), which is not a party to this litigation, is a special taxing district organized in 1960 pursuant to A.R.S. § 36–1231 et seq. (now A.R.S. § 48–1901 et seq.). The District owns the real property and buildings located on Willow Creek Road in Prescott, Arizona, comprising the hospital facilities known as the Yavapai Regional Medical Center (Hospital). The District is governed by an elected board of directors. Only registered voters who reside within the Hospital District's boundaries may vote in elections for the District board. The Yavapai County Board of Supervisors may levy taxes for the support of the Hospital District, and the District itself has the power to levy taxes. A.R.S. §§ 48–1907(6) and 48–1914(B). No Hospital District tax has ever been levied except for the payment of organizational expenses incurred when the District was created in 1960. The District is a political subdivision of the state and is subject to the Arizona open meeting law.

Pursuant to A.R.S. § 48–1907(5), the District has the power to provide for the operation and maintenance of a hospital owned by it. A.R.S. § 48–1910 empowers the District's board of directors to purchase personal and real property and erect or rent and equip buildings or rooms necessary for a hospital. Section 48–1910 also requires the District board to lease the hospital as provided by A.R.S. § 48–1911 if the District has any unpaid bonded indebtedness. A.R.S. § 48–1911 provides, in pertinent part:

A. A lease of the hospital and its equipment, executed by the board of directors of the district, shall:

. . . .

3. Be executed to a corporation not for pecuniary profit, duly organized under the laws of this state for the purpose of conducting a hospital.

4. Provide for a rental upon terms and in an amount which will provide a fair return to the district on its investment, be sufficient to meet the payments of principal and interest of bonds issued under this article, and provide amounts necessary to meet the expenses of the district.·

The Hospital was originally built with money the District obtained through selling bonds authorized by A.R.S. § 48–1912 (formerly A.R.S. § 36–1242). The District currently leases the Hospital to the appellant Association, a nonprofit corporation incorporated in Arizona in 1942 as the "Prescott Community Hospital Association." The Association adopted its current name by amending its Articles of Incorporation in 1963. Its Restated Articles of Incorporation state it was formed "[t]o own, operate, manage, and maintain hospitals, clinics, sanitoriums, or other places of treatment in any manner, of human ills of any kind or character...." The Restated Articles require the Association to "admit as members all persons who qualify for membership in accordance with such by-laws as it may adopt." Its Bylaws provide:

Each resident of the Central Yavapai Hospital District who is at least eighteen (18) years of age shall be a member of the Association at his will and shall be eligible to cast one vote in person for the election of each trustee or upon any issue presented at an annual or special meeting.

The Bylaws further provide that the trustees of the Association are to be elected by the votes of the Association's members at annual elections. Under the Restated Articles of Incorporation and the Bylaws, provisions of the Bylaws may be amended only by a majority vote of the members present at a regular or special meeting of the membership.

The Association's annual elections for trustees do not coincide with elections for the Hospital District's board of directors, and the District plays no part in the process by which the Association's trustees are elected. The cost of elections for trustees of the Association is borne entirely by the Association.

The Hospital District leases the Hospital to the Association. The current lease commenced April 15, 1986, and will continue for a period of ten years subject to renegotiation and termination provisions. If the Association defaults on the lease or fails to renew it, all equipment, furnishings and supplies located on the leased real property revert to the District subject to any existing liens or encumbrances. The lease also provides

[t]hat the Yavapai Community Hospital Association is hereby appointed as agent of Central Yavapai Hospital District to deal with any tangible personal assets and/or equipment owned by the Central Yavapai Hospital District. Lessee is hereby bound by all bidding statutes and other rules required of the Central Yavapai Hospital District in transferring or acquiring property owned or to be purchased by the Central Yavapai Hospital District.

The base rental for the ten-year lease term is $4,302,832.50. The lease requires the Association to furnish the District with monthly financial statements relating to the operation of the Hospital. The lease also contains a procedure whereby payments from the Association to the District are periodically adjusted so as to be sufficient to assure payment of the District's net debt service obligations and expenses. Accordingly, the Association's rental payments cover all the District's expenses and interest and principal on its bonded indebtedness without the need for it to rely on tax revenues. The lease additionally provides that the Association cannot dilute or transfer to a third party any interest it owns in outside corporations or entities without the prior written consent and approval of the boards of both the Association and the District.

The Hospital is operated by the officers, employees and medical staff of the Association. The Hospital District is not involved in the day-to-day operation of the Hospital. Rather, the Hospital operation is funded entirely by the Association's business in-

come and credit, and the Association either owns or leases all equipment used in operating the Hospital. The District does not contribute to the funding of the Hospital operation, nor does the Association have any power to levy taxes. The Association has approximately 500 employees paid from its own funds, makes its own decisions concerning compensation and employee benefits, and adopts its own operating budget without approval of the District, the state or any political subdivision. The Association's indebtedness is all incurred on its own credit. Its revenues have almost always exceeded its expenses, and it uses excess revenues to pursue other projects aimed at meeting the needs of District residents. In addition to operating the Hospital, the Association owns all stock of Interactive Health Systems, Inc., a for-profit corporation which owns and operates an outpatient health care clinic in Prescott Valley. It also provides intravenous therapy and other medical and educational services for residents of the District.

Under the Hospital lease, the Association is required to furnish hospitalization and medical and mental health care to the indigents of Yavapai County on "such terms and conditions as may be mutually satisfactory and agreeable" to the Association and Yavapai County. The lease provides:

> In the event [the Association], for any reasons, should fail or refuse to furnish hospitalization and medical care for the indigent sick of Yavapai County pursuant to mutually satisfactory and agreeable terms as hereinabove provided, then these presents shall be void and of no effect and the Lease and Sub-lease shall be terminated.

In accordance with the lease, the Association has entered into a contract with Yavapai County to provide comprehensive medical care to indigents in that county. The Hospital lease does not require the Association to provide indigent care in the absence of a contract; its only obligation to provide indigent care arises from its contract with Yavapai County. Pursuant to that contract, the Association is compensated for the indigent care it provides. It receives no funds from Yavapai County other than pursuant to the indigent care contract.

On April 27, 1987, the Association's board of trustees voted to close to the public and the communications media a "retreat" which was scheduled May 1 and 2, 1987, for the members of its board. The trustees so voted because they did not believe the board of trustees was a "public body" or that Arizona's open meeting law applied to the Association. Appellees, including the state, filed their complaint for declaratory and injunctive relief on April 30, 1987. On that same date, appellees also applied for a temporary restraining order forbidding the Association from conducting any closed meeting or meetings to discuss matters related to the Association during its board's scheduled "retreat." After a hearing on April 30, 1987, the trial court issued the temporary restraining order and scheduled a hearing on whether a preliminary injunction should issue.

A combined trial and hearing on appellees' request for preliminary injunctive relief was held on May 15, 1987. At that time, the trial court permitted the Arizona Hospital Association to appear as *amicus curiae* in support of the Association. On May 29, 1987, the trial court ruled that the Association and its board of trustees were required to comply with the open meeting law and awarded appellees their attorneys' fees and costs. The trial court filed findings of fact and conclusions of law and later entered a judgment incorporating those findings and conclusions and awarding appellees $21,646.50 in attorney's fees and $475.65 for costs. The trial court later denied appellants' motion for new trial and motion to the amend findings and conclusions by formal order. This appeal followed.

## APPLICABILITY OF A.R.S. § 38–431 ET SEQ. TO THE ASSOCIATION'S BOARD OF TRUSTEES

A.R.S. § 38–431.01 is the cornerstone of Arizona's open meeting law. Subsection (A), which forms the legal backdrop for this dispute, provides: "All meetings of any public body shall be public meetings

and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings." "Public body" is a specifically defined term in the open meeting law. A.R.S. § 38–431(5) provides:

"Public body" means the legislature, all boards and commissions of the state or political subdivisions, all multi-member governing bodies of departments, agencies, institutions and instrumentalities of the state or political subdivisions, including without limitation all corporations and other instrumentalities whose boards of directors are appointed or elected by the state or political subdivision. Public body includes all quasi-judicial bodies and all standing, special or advisory committees or subcommittees of, or appointed by, such public body.[1]

In this case, the trial court concluded, as a matter of law, that the Association was a "public body" within A.R.S. § 38–431(5) because it constituted an "institution" or "instrumentality" of a political subdivision and was a corporation whose board of directors was "elected by the state or political subdivision." We must decide the correctness of the trial court's conclusions.

■ Some general principles guide our analysis. A.R.S. § 38–431.09, entitled "Declaration of Public Policy," provides:

It is the public policy of this state, reflected in this article, that meetings of public bodies be conducted openly and that notices and agendas be provided for such meetings which contain such information as is reasonably necessary to inform the public of the matters to be discussed or decided. Toward this end, any person or entity charged with the interpretations of this article shall take into account the policy of this article and shall construe any provision of this article in favor of open and public meetings.

Section 1–211(B), A.R.S., further provides that "[s]tatutes shall be liberally construed to effect their objects and to promote justice." However, unless it is plain or clear from the statute that a different meaning

was intended, the words used are to be accorded their usual and commonly understood meaning. *Kilpatrick v. Superior Court,* 105 Ariz. 413, 421–22, 466 P.2d 18, 26–27 (1970). "Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, contract or recorded word, no matter how explicit, could be saved from judicial tinkering." *Id.* at 422, 466 P.2d at 27. Moreover,

[l]egislative intent must first be sought in the words of the statute and if the language of the statute is plain and unambiguous it must be given effect and no other rules of construction will be employed to contradict their clear import.

*State Bd. of Accountancy v. Keebler,* 115 Ariz. 239, 240, 564 P.2d 928, 929 (App. 1977), *citing Balestrieri v. Hartford Accident & Indem. Ins. Co.,* 112 Ariz. 160, 540 P.2d 126 (1975); and *Ernst v. Collins,* 81 Ariz. 178, 302 P.2d 941 (1956). *See also* A.R.S. § 1–213; *Collins v. Stockwell,* 137 Ariz. 416, 671 P.2d 394 (1983); and *State Farm Mut. Auto. Ins. Co. v. Agency Rent–A-Car, Inc.,* 139 Ariz. 201, 677 P.2d 1309 (App.1983).

■ We first consider whether the Association can properly be viewed as an "institution" or "instrumentality" of the Hospital District. We cannot agree that the Association constitutes an "institution ... of the state or [a] political subdivision" thereof within the ordinary meaning of those words. *Webster's Third New International Dictionary* (G & C Merriam Co. 1969) defines "institution", in relevant part, as "2 ... b: an established society or corporation: an establishment or foundation esp. of a public character...." *Id.* at 1171. The Association could reasonably be referred to as an "institution" because it is an established corporation with an arguably public character. However, given the provisions of A.R.S. 48–1901 *et seq.* and those of the lease between the Association and the District, we conclude the Associa-

---

1. A.R.S. § 38–431(4) defines "political subdivision" to mean "all political subdivisions of the state, including without limitation all counties, cities and towns, school districts and special districts."

tion cannot reasonably be viewed as an institution *"of* the state or [a] political subdivision [here, the District]...." That qualifying phrase connotes an institution created by law as an organic constituent of the state or a political subdivision which functions as a concrete manifestation thereof. *Cf. Henderson v. Shreveport Gas, Elec. Light & Power Co.,* 134 La. 39, 63 So. 616 (1913). For example, the University of Arizona, the Arizona Historical Society, and the Arizona Pioneers' Home can clearly be viewed as institutions *of* the state. However, in the present case, the Association is not a creation of the law itself, but rather the creation of a group of private individuals acting together as authorized by Arizona's statutes governing the creation of private nonprofit corporations.

The Association's powers and duties are not dictated by statute or administrative regulation, but are governed by the provisions of its Articles of Incorporation, its Corporate Bylaws, and any contracts it elects to enter. Unlike statutes or administrative regulations, the Association's Articles of Incorporation and Bylaws are subject to change solely at the instance of its members or board of trustees and are not subject to the approval of any government entity except to the extent it has voluntarily submitted itself by contract. Although, in operating the Hospital, the Association can certainly be viewed as carrying out a function that could as well be undertaken by a political subdivision of the state under different circumstances, it has contractually bound itself to do so by reason of its lease agreement with the Hospital District.

It is true that the lease itself contains many provisions mandated by the statutes governing the creation and operation of the Hospital District. Nevertheless, the Association is bound to honor those provisions only because it previously chose to become a signatory to the lease. We also note that the Association was formed independently of the District and operates independently of it subject to the requirements of the lease. Unlike the District, the Association has no legal authority to levy any tax, and the Association funds its operations solely

with the fees it charges its patients and the amounts it receives from other entities by contract. In our opinion, the trial court erred in concluding the Association was an "institution ... of ... [a] political subdivision...." within the meaning of A.R.S. § 38–431(5).

■ For similar reasons, we also conclude the Association does not constitute an "instrumentality" of the Hospital District. *Webster's Third New International Dictionary* defines "instrumentality," in pertinent part, as follows:

2. ... b: something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out: a part, organ or subsidiary branch esp. of a governing body....

*Id.* at 1172. *Webster's* also states:

INSTRUMENTALITY may suggest the fact of serving as an instrument but in today's English it is likely to suggest a means or agency which is a minor part of a larger entity or under the control of a subsuming organization....

*Id.* at 1398. It is quite clear to us that, though the Association provides hospital services as required by its contract with the Hospital District, it does not thereby become a part, organ or subsidiary branch of the District and operationally is not under the District's control. *See Rockford Newspapers, Inc. v. Northern Illinois Council on Alcoholism and Drug Dependence,* 64 Ill.App.3d 94, 21 Ill.Dec. 16, 380 N.E.2d 1192 (1978); *District Attorney v. Board of Trustees of Leonard Morse Hosp.,* 389 Mass. 729, 452 N.E.2d 208 (1973). Moreover, under the circumstances of this case, the function the Association performs is not committed to the Hospital District itself, but instead is to be performed by a nonprofit corporation. *See* A.R.S. § 48–1911(A)(3).

Appellees' reliance on *Peterson v. Tucson Gen. Hosp.,* 114 Ariz. 66, 559 P.2d 186 (App.1976), is not well taken. There, in generally discussing the distinguishing features of private, public and "quasi-public" hospitals, Division Two of this court characterized a "public" hospital as "an instru-

mentality of the state founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state." *Id.* at 69, 559 P.2d at 189. Here, the Association is supported not by public funds, but by the fees it charges its patients and the amounts it is paid by Yavapai County under contract in return for treating and attending to indigents. It is governed not by persons who derive their authority from the state, but rather by persons who derive their authority from its Restated Articles of Incorporation and Bylaws. *Peterson* thus supports the opposite conclusion from that for which appellees cite it. Accordingly, the trial court also erred in concluding that the Association constituted an "instrumentality ... of [a] political subdivision...." under A.R.S. § 38–431(5).

■ We next consider whether the trial court erred in concluding the Association was a "public body" because it fell within the meaning of the clause "all corporations ... whose boards of directors are ... elected by the state or political subdivision." Appellants argue that neither the Association nor its board of trustees are a "public body" within the plain and unambiguous language of A.R.S. § 38–431(5). More specifically, they reason that the Association's board of trustees is not "elected by ... [a] political subdivision," but rather is elected by the members of the Association, defined in its Bylaws as all residents of the District who are at least eighteen years old and wish to participate. They further note that this Association membership is not the same as the District's voters, who must all be registered and "qualified electors" as defined in A.R.S. § 16–121. Appellees, on the other hand, urge that we look beyond the plain meaning of the statute and rules of statutory interpretation and go behind the statute to determine that, because the proponents of the statutory amendment to A.R.S. § 38–431(5) intended to include bodies such as the Association in the open

meeting law, the unambiguous language of the statute be read to do so.[2]

Appellees cite legislative history in an attempt to create an ambiguity where none exists. As we have already noted, the language "elected by the state or political subdivision" in A.R.S. § 38–431(5) is clear and unambiguous. We therefore cannot go beyond the statute to contradict its clear import and must give the language effect according to its usual and common meaning. *Keebler,* 115 Ariz. at 240, 564 P.2d at 929; *Kilpatrick,* 105 Ariz. at 421–22, 466 P.2d at 26–27. *See also State v. Sweet,* 143 Ariz. 266, 693 P.2d 921 (1985).

The Association's board of trustees are elected by the Association membership as defined by its Bylaws, which can be amended at any time by a majority vote of that same membership. Election by the Association membership cannot be equated with election by the Hospital District, a political subdivision of the state, simply because the Association includes in its membership requirements that the person be an eighteen-year-old resident of the geographic area known as the Hospital District. The District's electorate is much more strictly defined than the Association's membership and is controlled by statute.

In order to participate in an election of the Hospital District's board of directors, a person must be currently registered, eligible, and qualified to vote. A.R.S. §§ 16–120, 16–121, and 16–122. To be a properly-registered voter for District elections, the individual must, among other requirements, be 1) at least eighteen years old, 2) a United States citizen, and 3) a resident of the state for at least fifty days before the election. *See generally* A.R.S. § 16–101. No elector shall be eligible to vote in a district election unless he has been "registered to vote as a resident within the boundaries or the proposed boundaries of the election district for which the election is being conducted prior to midnight of the

---

**2.** Appellees cite Op.Atty.Gen. I84–091, dated June 24, 1984, its addendum dated August 9, 1984, and correspondence regarding this opinion to support this contention. (HB 2115 passed both houses of the legislature, was signed by the Governor, and became effective August 7, 1985. Laws 1985, ch. 203, § 1.)

fiftieth day preceding the date of the election." A.R.S. § 16–120.

In contrast, in order to participate in an election of the Association's board of trustees, a person need only be a District resident, eighteen years of age, and attend a meeting to vote. Neither registration nor the strictures and time constraints required for registration as a district qualified elector apply. Therefore, the trial court further erred in concluding that the Association was a "public body" because its board of trustees is "elected by the state or political subdivision" under A.R.S. § 38–431(5).

### ATTORNEYS' FEES

■ Appellants have requested costs, expenses, and attorneys' fees both at trial and on appeal pursuant to A.R.S. § 12–348(A)(1) (Supp.1987), arguing they are entitled to them as the prevailing parties on the merits in a civil action brought by the state. Appellee state, however, argues A.R.S. § 38–431.07 is a more specific statute regarding the award of attorneys' fees in this case and controls resolution of this issue.

We note that A.R.S. § 38–431.07(A) controls only the award of reasonable attorneys' fees sought by a successful plaintiff in a suit to enforce the open meeting law against the state or political subdivision as a defendant who has failed to comply with its provisions. In this case, the state is neither a successful plaintiff, nor is it the defendant allegedly in violation of A.R.S. § 38–431 *et seq.*, the open meeting provisions. It is instead an *un*successful plaintiff; therefore, § 38–431.07(A) does not apply. Moreover, the original complaint filed on April 30, 1987, was brought by the State of Arizona, Prescott Newspapers, Inc., First Amendment Coalition and Ron Palmatier together. Therefore, § 12–348(A)(1) controls and appellants are entitled to recover their attorneys' fees, costs, and other expenses from the state at trial and on appeal.

It is hereby ordered granting appellants' request for attorneys' fees, costs and expenses from the state which have been incurred on appeal subject to their compliance with Rule 21, Ariz.R.Civ.App.P. The trial court's judgment granting appellees declaratory and injunctive relief and awarding them attorneys' fees and costs is reversed. The matter is remanded for the trial court's consideration and award of appropriate attorneys' fees and costs incurred at the trial level.

EUBANK, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I disagree with the majority. I believe that the Yavapai Community Hospital Association (Association) is an instrumentality of the Yavapai County Hospital District (District), the board of directors of which is elected by a political subdivision of the state within the meaning of A.R.S. section 38–431(5). I do not agree with the majority's conclusion that the statute's language is so clear and unambiguous that we need not resort to legislative history to determine its meaning. What is clear beyond quibble—indeed, what the appellants concede—is that the statute's legislative history evinces a clear intent to subject this association, and others like it, to the provisions of the Open Meeting Law. I turn first to that legislative history to dispel any doubt on this point.

Five years ago, Representative Jerry Everall, who represented the state legislative district that includes Prescott, requested an opinion from the Attorney General of Arizona as to whether the Association was subject to the Open Meeting Law as the law was then worded. In Attorney General Opinion Number I84–091, dated June 24, 1984, the Attorney General opined that the Association qualified as a "public body" because the District was a political subdivision and the Association's directors were "appointed" by the residents of that subdivision. On July 24, 1984, the Association wrote to the Attorney General and requested that he reconsider his opinion. It argued that the election of members of the Association's board of trustees by the Association's membership was not equivalent to the appointment of members of the

board of trustees by the District itself. The letter stated in part:

The Association board is not selected by electors of the District. The Association Board of Directors is elected by persons over the age of eighteen who reside within the territorial boundaries of the District. The District is a political subdivision and thereby constitutes a separate entity. By defining an electorate of the Association to be residents of the District of at least eighteen years of age [and] allowing each such member to vote in the election for directors of the Association, no action is taken by the political entity of the District.

The actual election of Association board members must not be confused with the process of appointment. The word 'appointed' as used in A.R.S. § 38–431.5 is consistent with the selection of members of a board of directors by a separate political entity, but is inconsistent with the voting procedures utilized by the Association in the election of its board members.

In response to this letter, the Attorney General issued an addendum opinion numbered I84–091 on August 9, 1984. The opinion reached the following conclusion:

Upon further examination, we now revise our opinion based upon the fact that the Association's board is elected rather than appointed by the District, a political subdivision, and now conclude that the Association is not subject to Arizona's Open Meeting Law. We do not believe that the word 'appointed' as it is used in A.R.S. § 38–431.5 encompasses the actual election, rather than appointment, of the Association board members.

On January 22, 1985, Representative Dave Carson of Yavapai County, among others, introduced HB 2115. The bill sought to amend A.R.S. section 38–431(5) to provide that the term "public body" would include "all corporations and other instrumentalities whose boards of directors are appointed OR ELECTED by the state or political subdivision." The minutes of a March 5, 1985, meeting of the House Committee on Government Operations include the following statement concerning HB 2115:

Mr. Carson said that this bill would close some loopholes in the current law governing open meetings.

HB 2115 passed both houses of the legislature and was signed by the Governor. It became effective August 7, 1985. Laws 1985, ch. 203, § 1. Thus, as I have already observed, the statute was amended for the specific purpose of bringing this very association, and others like it, under the Open Meeting Law.

The majority holds that no matter how clear the legislature's intent in passing the 1985 amendment to A.R.S. section 38–431(5) was, the amendment was not legally sufficient to bring the Association and similar organizations within the reach of the Open Meeting Law because the words that the legislature selected to achieve this aim fell short of their mark. I therefore examine the language that the legislature chose to accomplish its goal. In doing so, I am mindful that the statute is to be construed in favor of requiring open and public meetings. A.R.S. § 38–431.09. The Open Meeting Law applies to meetings of "public bodies," which are defined as follows:

[T]he legislature, all boards and commissions of the state or political subdivisions, all multi-member governing bodies of departments, agencies, *institutions and instrumentalities of the state or political subdivisions, including without limitation all corporations and other instrumentalities whose boards of directors are appointed or elected by the state or political subdivision.*

A.R.S. § 38–431(5) (emphasis added).

At oral argument, counsel for Prescott Newspapers conceded that even though a corporation's board is elected by a political subdivision, it is not subject to the Open Meeting Law unless it is an instrumentality of the state or a political subdivision thereof. However, it was counsel's position that the election proviso informs the meaning of the term "instrumentality." Consequently, the first question to be resolved is whether it is reasonable to say that the Association is such an instrumentality. The majority

has already described the relationship between the District and the Association. An abbreviated recapitulation serves to emphasize that relationship.

The powers, duties, and responsibilities of the District and the Association are closely bound together, and the District has a high degree of control over the Association. The hospital is owned by the District. The District could operate the hospital itself were it not for the fact that the District has bonded indebtedness and *must* therefore lease the building to a non-profit corporation. A.R.S. §§ 48–1910, –1911. The Association pays rent that is adjusted to meet the interest payments and to reduce the principal due on the District's bonded indebtedness. The Association is also the District's agent in dealing with the District's tangible assets. The Association issues no stock and has no shareholders. Some of the hospital's excess revenues must be used to upgrade the facilities and equipment that belong to the District.

The whole purpose of the statutory scheme and of the lease itself is to provide for the construction and operation of a hospital to serve the public. The Association has agreed to operate the hospital for the general public and to "furnish hospitalization and medical and mental health care to the indigent sick as may be negotiated with the Board of Supervisors of Yavapai County, all pursuant to the applicable statutes of the State of Arizona." It therefore, at least in part, fulfills a governmental function.

The majority takes its definition of the word "instrumentality" from *Webster's Third New International Dictionary.* According to *Webster's,* the word connotes an agency by which a controlling entity carries out one or more of its functions. While the word may not perfectly fit the relationship between the District and the Association, I believe that its definition is broad enough to apply to it.

I next consider whether the trustees of the Association are elected by a political subdivision. In this respect the statute is very inartfully worded. A political subdivision cannot, on its own, elect anyone. This very lack of art, however, illustrates the need to resort to legislative history.

Since the language must mean something, I take the legislature's intent to have been that the condition applies when the residents, or some class of residents, of a discrete political subdivision elect the trustees. In this case, all persons who are at least eighteen years of age and who reside within the District may vote for members of the board of trustees of the Association. It is the residents of the District, a political subdivision, who elect the trustees. Taken literally, this electoral provision falls squarely within the statute.

The majority reasons that because those who may vote for the trustees need not be qualified electors of the District, the trustees are not elected by a political subdivision. It is certainly true that the set of persons eligible to vote for the trustees of the Association is not identical to the set of persons eligible to vote for the District's directors. Given the public policy of the Open Meeting Law, I think that this fact undercuts, rather than supports, the majority's argument. It would be hard to imagine an electoral scheme that better acknowledges the direct interest of the general public in the affairs of the Association than one that allows *all* residents to vote, whether or not they are registered to do so in other elections.

The Association argues that if the Open Meeting Law is interpreted to apply to the Association, all sorts of corporations that contract with governmental agencies will unexpectedly be brought within the law's purview. I doubt this. Few government contractors are subject to the kind of ties that bind the District and the Association. In any event, as the North Carolina Court of Appeals observed in a case similar to this one, "each new arrangement must be examined anew and in its own context." *News & Observer Publishing Co. v. Wake County Hosp. System, Inc.,* 55 N.C.App. 1, 11, 284 S.E.2d 542, 548 (1981).

My conclusion that the Association is an instrumentality of a political subdivision whose board is elected by a political subdivision requires me to address other issues

raised by the Association. The first of these is the claim that the "retreat" which the board planned was not a "meeting" within the meaning of A.R.S. section 38–431(3). That section defines a "meeting" as a "gathering of a quorum of members of a public body to propose or take legal action, including any deliberations with respect to such action." "Legal action" includes deliberations by a majority of a public body with respect to a matter that could foreseeably come to a vote by that body. *Valencia v. Cota,* 126 Ariz. 555, 556–57, 617 P.2d 63, 64–65 (App.1980). It is undisputed that the purpose of the "retreat" was to enable the board of trustees to evaluate its performance, to set goals for the coming year, and to develop ways for meeting those goals, including the calendaring of certain matters. In my opinion, a gathering of the board members for such purposes would necessarily include deliberations with respect to matters that might foreseeably come to a vote.

The Association also argues that requiring it to open its meeting offends its members' right to privacy and free speech. It cites no authority that genuinely supports this thesis, and I am aware of none. Several cases support the opposite view. *See Cole v. State,* 673 P.2d 345, 350 (Colo.1983); *St. Cloud Newspapers, Inc. v. District 742 Community Schools,* 332 N.W.2d 1, 7 (Minn.1983).

Since the appellees have not prevailed, I will not address the attorney's fees issue, except to say that given the result that the majority reaches on the merits, its conclusion as to the attorney's fees issue is correct.