177 P.3d 334

**UNITED DAIRYMEN OF ARIZONA, an Arizona corporation, Plaintiff/Counter–Defendant/Appellee/Cross–Appellant,**

v.

**David L. RAWLINGS dba David Rawlings Dairy, Defendant/Counter–Claimant/Appellant/Cross–Appellee.**

No. 1 CA–CV 06–0753.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 28, 2008.

Squire Sanders & Dempsey LLP, By George I. Brandon, Sara Regan, And Brian M. McQuaid, Phoenix, Attorneys for Plaintiff/Counter–Defendant/Appellee/Cross–Appellant.

Jennings Strouss & Salmon PLC, By Brian Imbornoni, Phoenix, Attorney for Defendant/Counter–Claimant/Appellant/Cross–Appellee.

---

**1.** Pursuant to Arizona Rules of Civil Appellate Procedure 28(g), we address other issues raised on appeal by Rawlings and UDA's cross-appeal by separate memorandum decision filed herewith.

## OPINION

BROWN, Judge.

¶ 1 David Rawlings appeals from a judgment awarding United Dairymen of Arizona ("UDA") liquidated damages for Rawlings' breach of a cooperative marketing agreement. UDA cross-appeals several issues relating to the judgment and prior rulings of the trial court. For the following reasons, we affirm the jury's verdict awarding liquidated damages to UDA.[1]

## BACKGROUND[2]

¶ 2 Rawlings owned and operated the David Rawlings Dairy in Laveen for many years. In 1979, he joined UDA, an Arizona cooperative association for dairy farmers. Rawlings entered into an amended membership agreement ("Agreement") with UDA on April 28, 1988. Pursuant to the Agreement, Rawlings agreed to deliver all milk he produced to UDA. In return, UDA was responsible for marketing and delivering the milk to its customers, collecting the proceeds of the sale, and distributing the funds to its members. The Agreement, in paragraph 10, also provided:

> The member hereby agrees that if at any time while this Agreement is in force and effect, he neglects or refuses to deliver all milk produced by him to such person or persons, and at such place or places, and in such manner as may be designated from time to time by the Association, then in that event, the Member will pay to the Association *a sum of money equal to forty percent of the gross sale price of such milk* as the Member may deliver to any person or persons or at any place or in any manner not designated by the Association or otherwise in violation of this Agreement.

(Emphasis added.) Rawlings further agreed to abide by UDA's Bylaws, which also provided for the recovery of liquidated damages if a member breached the Agreement.

---

**2.** "In reviewing a judgment based on a jury verdict, we view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the judgment." *Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 560, ¶ 2, 81 P.3d 1016, 1019 (App.2003) (citation omitted).

¶ 3 In 2000, several events occurred that formed the basis of this litigation. Desert Ridge Dairy, a limited liability company owned and operated by Rawlings' son Tim, applied for membership in the Maverick Milk Producers Association ("Maverick"), a competing cooperative of dairy farmers. Maverick accepted the application on May 30, 2000.

¶ 4 In July 2000, Rawlings signed an application for base transfer ("Application") and submitted it to UDA for consideration. In the Application, he agreed to sell his "base" to another dairy for approximately $300,000.[3] The UDA board of directors approved the transfer of base. By signing the Application, Rawlings agreed he would not "own, operate or manage" a dairy farm or herd for a period of three years unless he marketed the milk through UDA.

¶ 5 Rawlings informed UDA he was ceasing his dairy operation, based on his intent to retire, and he stopped delivering milk to UDA on August 15, 2000. Thereafter, Rawlings continued to own the real property where the Laveen dairy was operated and he also lived in the main residence located there. According to Rawlings, he leased the Laveen property and equipment to Desert Ridge Dairy, which in turn operated the dairy after August 15, 2000.

¶ 6 Shortly before his retirement in August 2000, Rawlings purchased real property in Buckeye on which an existing dairy facility was located. He also purchased all the equipment necessary to operate a dairy. Rawlings leased the property and equipment to Desert Ridge Dairy.

3. The amount of "base" owned by a member determines the price that member receives for the milk he produces. The "base" plan is described in more detail in *Lueck v. United Dairymen of Ariz.*, 162 Ariz. 232, 782 P.2d 708 (App. 1989).

4. UDA also sued Rawlings for fraudulent misrepresentation and negligent misrepresentation. The court granted summary judgment in favor of Rawlings on both claims.

5. The court, referring to the case of *UDA v. Schugg*, stated: "Each of these motions was, in the main, argued and decided in the Schugg case. While one or both of these parties have urged that (1) different facts here should dictate

¶ 7 In October 2002, UDA filed a lawsuit against Rawlings, alleging he breached the Agreement by continuing to produce milk in Arizona that was marketed through a competing cooperative association. UDA further alleged Rawlings breached the Application by owning, operating, or managing a dairy farm but not marketing the milk through UDA. UDA sought liquidated damages in an amount equal to forty percent of the gross sale price of the milk Rawlings delivered to any person not designated by UDA. UDA also contended Rawlings breached the covenant of good faith and fair dealing implied in both the Agreement and the Application.[4]

¶ 8 The parties filed numerous pretrial motions. Relevant to the issue addressed in this opinion, UDA filed a motion for partial summary judgment on the enforceability of the liquidated damages provision included in the Agreement. UDA sought a determination that the liquidated damages provision was valid and enforceable as a matter of law. Rawlings filed a cross-motion for partial summary judgment on the same issue, asserting the liquidated damages provision was unenforceable because it constituted a contractual penalty. The trial court ruled in favor of UDA, adopting its reasoning from a prior case addressing the enforceability of the same liquidated damages provision at issue here: [5]

(1) The terms of paragraph 10 are clear and unambiguous. As such, the court is required to give effect to the parties' agreement if the agreement is lawful.

(2) A.R.S. § 10–2016(D) clearly and unambiguously authorizes agreements such as

different outcomes here or (2) the Schugg decisions were simply wrong. [sic] Upon reflection the court concludes that the motions should be decided the same way. The court's reasoning in its January 12, 2004 minute entries [sic] in CV2001–022535 is applicable here." The judgment in the *Schugg* case, subsequently appealed to this court, was reversed on other grounds and we found it unnecessary at that time to address "whether A.R.S. § 10–2016 abrogates common-law principles barring enforcement of liquidated damages provisions as penalties when the fixed amount is not a reasonable prediction of just compensation for the harm." *See United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 139 n. 6, ¶ 21, 128 P.3d 756, 762 n. 6 (App.2006).

that found in paragraph 10 of the membership agreement.

(3) In light of the plain and unambiguous language of A.R.S. § 10–2016(D), the court has no reason to look to the statute's legislative history in order to interpret the statute. The plain and unambiguous words of the legislature are to be honored by the court.

(4) A.R.S. § 10–2016(D) is an expression of public policy and, therefore, paragraph 10 of the membership agreement is consistent with sound public policy.

(5) Paragraph 10 is valid and enforceable.

¶9 At trial, UDA sought liquidated damages of $5,174,063 for breach of the Agreement, actual damages of $1,290,713 for breach of any other portion of the Agreement not providing liquidated damages, and actual damages of $1,387,435 for breach of the Application. The jury found in favor of UDA on its claim for breach of the Agreement and awarded UDA liquidated damages of $90,800. The jury also determined that Rawlings breached the covenant of good faith and fair dealing with respect to the Agreement and awarded UDA $25,000 in actual damages; however, the award was later reduced to zero by the trial court. The jury found in favor of Rawlings on UDA's claims for breach of the Application for base transfer and breach of the covenant of good faith and fair dealing related thereto. Rawlings timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

¶10 Rawlings challenges the trial court's determination that the liquidated damages provision was enforceable as a matter of law. Specifically, Rawlings asserts that the court erred because it declined to apply common-law principles governing liquidated damages. Rawlings contends that because the liquidated damages provision constitutes an unen-

forceable penalty, UDA was entitled only to actual damages and it failed to prove any such damages. UDA counters that the trial court appropriately declined to inquire into the reasonableness of the liquidated damages provision set forth in paragraph 10 of the Agreement because the damages provision is authorized by statute.

¶11 As a general matter, a stipulated damages provision made in advance of a breach is a penalty, and therefore unenforceable, unless two conditions are met: First, the amount fixed in the contract must be a reasonable forecast of just compensation for the harm caused by the breach; and second, the harm caused by a breach must be incapable or very difficult of accurate estimation. *Larson–Hegstrom & Assocs., Inc. v. Jeffries*, 145 Ariz. 329, 333, 701 P.2d 587, 591 (App. 1985). The situation before us, however, is not governed by the typical penalty analysis outlined above because the contract clause at issue is expressly authorized by A.R.S. § 10–2016(D) (2004), which relates to cooperative marketing association marketing contracts and provides as follows:

> When provided in the by-laws, *the marketing contract may fix, as liquidated damages,* specific sums to be paid by the members to the association upon the breach by him of any provision of the marketing contract regarding the sale or delivery or withholding of products, and that the member will pay all costs, premiums for bonds, expenses and fees if an action is brought upon the contract by the association, *and such provision shall be valid and enforceable in the courts.*

(Emphasis added.)[6] Therefore, we must determine whether the legislature intended that a liquidated damages clause included in a cooperative marketing association marketing agreement be enforced in accordance with its terms without regard to common-law principles limiting the enforceability of such a clause.[7]

---

**6.** We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

**7.** Although the Agreement at issue here is labeled a "membership" agreement, Rawlings does not

dispute that the Agreement constitutes a "marketing" agreement as contemplated by A.R.S. § 10–2016(D).

¶ 12 "The primary principle of statutory interpretation is to determine and give effect to legislative intent." *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). To determine the legislature's intent, we look first to the language of the statute and apply "fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Deer Valley Unified Sch. Dist. No. 97 v. Houser,* 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (quoting *Janson ex rel. Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). *See also Prescott Newspapers, Inc. v. Yavapai Cmty. Hosp. Ass'n,* 163 Ariz. 33, 38, 785 P.2d 1221, 1226 (App.1989) (noting that plain and unambiguous statutory language must be given effect and other rules of construction will not be employed to contradict the language). If the statutory language is clear and unambiguous, we do not look to "legislative history in an attempt to create an ambiguity where none exists." *Prescott Newspapers, Inc.,* 163 Ariz. at 40, 785 P.2d at 1228. Statutory interpretation is an issue of law we review de novo. *State Comp. Fund v. Superior Court,* 190 Ariz. 371, 374, 948 P.2d 499, 502 (App.1997).

¶ 13 We construe words and phrases according to the common and approved use of the language. A.R.S. § 1–213 (2002). "In determining the ordinary meaning of a word, we may refer to an established and widely used dictionary." *State v. Mahaney,* 193 Ariz. 566, 568, ¶ 12, 975 P.2d 156, 158 (App. 1999).

¶ 14 The key phrase at issue here is "valid and enforceable." "Valid" means "[l]egally sufficient; binding." Black's Law Dictionary 1586 (8th ed.2004). *See also* Webster's II New College Dictionary ("Webster's Dictionary") 1247 (3d ed.2005) ("legally sound and effective"). Thus, the legislature's inclusion of the word "valid" shows its intent that a liquidated damages provision in a cooperative marketing agreement is legally sufficient, binding, and effective. Rawlings does not suggest any other meaning or interpretation of the word "valid."

¶ 15 Instead, Rawlings focuses only on the word "enforceable," asserting it means "capable of enforcement," based upon the ordinary meaning of the suffix "-able," which means "susceptible, capable, or worthy of a specified action." *See* Webster's Dictionary 2. He argues, therefore, that liquidated damages provisions entered into pursuant to A.R.S. § 10–2016(D) are merely "capable" of enforcement.

¶ 16 Consistent with Rawlings' suggested interpretation, "enforceable" is defined by at least one dictionary as "capable of being enforced." *See* Compact Edition of the Oxford English Dictionary Vol. I 865 (1971). However, we decline to rely on the dictionary definition because it fails to take into consideration the distinct meaning of "enforceable" commonly employed by the courts. "Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." A.R.S. § 1–213.

¶ 17 Prior to 1921, and continuing to the present, courts in Arizona and other jurisdictions have consistently used "enforceable" to describe a definite and certain legal conclusion, rather than a mere suggestion that a particular obligation is "capable" of being legally upheld. *See Grand Trunk W. Ry. Co. v. City of South Bend,* 227 U.S. 544, 33 S.Ct. 303, 57 L.Ed. 633 (1913) (ordinance conferring a street franchise created a valid and binding contract, *enforceable* according to its terms); *Savoca Masonry Co. v. Homes & Son Const. Co.,* 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975) (*enforceable* contract must include an offer, acceptance, consideration, and sufficient specificity of terms); *Globe Sch. Dist. No. 1 v. Bd. of Health of City of Globe,* 20 Ariz. 208, 221, 179 P. 55, 61 (1919) (local board of health measure was an *enforceable* order and therefore binding upon the school district); *Harrington v. Pulte Home Corp.,* 211 Ariz. 241, 254, ¶ 55, 119 P.3d 1044, 1057 (App.2005) (concluding that arbitration clause in purchase agreement was *enforceable*); *Burley Tobacco Soc'y v. Gillaspy,* 51 Ind.App. 583, 100 N.E. 89, 92 (1912) ("Contracts between parties capable of contracting are legal and *enforceable,* unless the

contract itself discloses its illegality.") (emphasis added).

¶ 18 Conversely, "unenforceable" describes a legal conclusion indicating that a particular matter or obligation cannot be enforced, or in other words, does not have the force of law. *See Crane v. Franklin,* 17 Ariz. 476, 480, 154 P. 1036, 1038 (1916) (contract *unenforceable* if not in writing as required by the statute of frauds); *Gibson v. McLane,* 17 Ariz. 61, 66, 148 P. 288, 290 (1915) (contract would be *unenforceable* at its inception). Accordingly, we find that the word "enforceable" has a peculiar and appropriate meaning in the law and therefore we reject Rawlings' contention that "enforceable" refers to a contract provision that is merely "capable" of enforcement.[8]

¶ 19 The legislature's inclusion of "enforceable" in the statute manifests its intent to follow the common and approved meaning of that word as defined and relied upon by the courts. *See State ex rel. Frohmiller v. Hendrix,* 59 Ariz. 184, 189, 124 P.2d 768, 771 (1942) (relying upon commonly understood definition of a word as the one "peculiarly applicable" to the word as used in the statute). Based upon the common and approved meanings of the words used by the legislature, the phrase "valid and enforceable" is clear and unambiguous. A liquidated damages provision in a cooperative marketing agreement is legally sufficient, binding, and to be given legal force and carried out by the courts of this state. Therefore, we conclude that the language of A.R.S. § 10–2016(D) plainly shows the legislature's intent that liquidated damages provisions in a marketing agreement are binding on the parties who agreed to them, without regard to other factors such as the reasonableness of the amount agreed to by the parties or whether actual damages would be difficult to calculate.

¶ 20 Here, the liquidated damages provision of the Agreement entered into between UDA and Rawlings falls squarely within the parameters of A.R.S. § 10–2016(D) because it was authorized in the Agreement and the Bylaws of UDA. Accordingly, the trial court correctly determined that the liquidated damages provision was enforceable against Rawlings as a matter of law.[9]

¶ 21 Rawlings also argues that we should analyze legislative history relating to A.R.S. § 10–2016(D) to establish the legislature's intent. Because we conclude that the statute's language is clear, we do not need to address legislative history.[10] *See Prescott Newspapers, Inc.,* 163 Ariz. at 40, 785 P.2d at 1228.

**8.** Rawlings cites one case in support of his argument that "enforceable" refers to a contract provision that is "capable" of being enforced. *See Okla. Cotton Growers' Ass'n v. Salyer,* 114 Okla. 77, 243 P. 232 (1925). The *Salyer* case, however, does not support Rawlings' position. The Oklahoma statute at issue there had the same "valid and enforceable" language found in A.R.S. § 10–2016(D), but the statute also required that the liquidated damages be "reasonable sums, in amount fairly related to the actual damages ordinarily suffered in like circumstances." *Id.* at 236. The Arizona statutory provision we interpret here does not include any similar limitation.

**9.** UDA argues that the liquidated damages should also be upheld based upon the express language of the Agreement. We need not address this issue based on our conclusion that A.R.S. § 10–2016(D) specifically authorizes the clause at issue here.

**10.** Attempting to analyze legislative history would not assist us in resolving this issue. The statute was adopted in 1921 and no Arizona history provides guidance as to what the legislature intended by stating that a liquidated damage clause in a marketing agreement would be "valid and enforceable." The history cited by Rawlings is taken from other jurisdictions and none of the related cases he cites addresses the precise issue before us. In addition, Rawlings has not cited any cases indicating the status of the common law in Arizona prior to 1921 relating to liquidated damages. We cannot simply presume that the legislature intended the statute to be subject to certain common-law requirements, such as reasonableness, if it is unclear what law was in effect prior to the statute's enactment. Further, we note that when the Arizona legislature has intended to include a reasonableness requirement, it has done so explicitly. *See* A.R.S. § 32–2173(A)(2)(b) (2007) (stating that a property management agreement may provide for "reasonable" liquidated damages for early termination of the agreement). *See also Bigelsen v. Ariz. State Bd. of Med. Exam'rs,* 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App.1993) (citation omitted) (when legislature specifically uses a term in certain places within statute and excludes it from another place, courts do not read the term into the section from which it was excluded).

¶ 22 Rawlings argues that interpreting the statute as the trial court did, and as we do here, means that a member of a cooperative association could never challenge the liquidated damages provision imposed by the association even if the member could prove defenses such as fraud, lack of capacity, or lack of compliance with the statute of limitations. We disagree. Section 10–2016(D) provides that when a member breaches "any provision of the marketing contract regarding the sale or delivery or withholding of products," the liquidated damages provision is valid and enforceable. The statute does not purport to limit defenses applicable to the enforceability of the contract itself. For example, if UDA had failed to file this lawsuit within the applicable statute of limitations, then Rawlings could have raised the limitations defense to enforcement of the entire contract. The mere filing of a lawsuit by a cooperative association does not mean the association is automatically entitled to everything it asks for in the way of liquidated damages. An association must prove compliance with A.R.S. § 10–2016(D), which includes establishing that the member was in breach. In this case, UDA alleged that Rawlings was in breach for approximately two-and-one-half years, but the jury determined the breach occurred for a much shorter time period.

¶ 23 Finally, Rawlings asserts that the liquidated damages provision, providing for payment of forty percent of gross sales, does not comply with A.R.S. § 10–2016(D) because it does not constitute a "specific sum." He contends that the statute provides no authority for an open-ended percentage of revenue and that a specific sum should be capable of calculation based on a flat rate or specific unit of production. We disagree. "Specific" means "definite" and "sum" is defined as "an amount of money." Webster's Dictionary 1085, 1130. Joined together, a specific sum is a definite amount of money. There is no dispute that the jury had sufficient information before it to calculate Rawlings' gross sales of milk and multiply it by forty percent to arrive at a specific sum of liquidated damages. Because the statutory language is unambiguous, we decline to restrict its application in the manner suggested by Rawlings. *See City of Phoenix v. Donofrio,* 99 Ariz. 130, 133, 407 P.2d 91, 94 (1965) ("Courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself.").

## CONCLUSION

¶ 24 Based on the foregoing, we affirm the judgment awarding liquidated damages to UDA.

CONCURRING: DONN KESSLER and LAWRENCE F. WINTHROP, Judges.